560 So.2d 820 (1990)
LOUISIANA STATE BAR ASSOCIATION
v.
Douglas ST. ROMAIN.
No. 89-B-0252.
Supreme Court of Louisiana.
April 30, 1990.
Dissenting Opinion May 2, 1990.
Rehearing Denied June 21, 1990.
*821 Thomas O. Collins, Jr., G. Fred Ours, Harvey J. Lewis, Elizabeth A. Alston, New Orleans, Robert J. Boudreau, Lake Charles, Trevor G. Bryan, Robert M. Contois, Jr., New Orleans, Frank J. Gremillion, Baton Rouge, William W. Hall, Metairie, Carrick R. Inabnett, Monroe, T. Haller Jackson, III, Shreveport, Christine Lipsey, Baton Rouge, Edmund McCollam, Houma, Gerard F. Thomas, Jr., Natchitoches, for applicant.
Irwin R. Sanders, Douglas J. St. Romain, for respondent.
Dissenting Opinion of Justice Lemmon May 2, 1990.

DISCIPLINARY PROCEEDING
WATSON, Justice.[*]
In this disciplinary proceeding by the Louisiana State Bar Association against attorney Douglas J. St. Romain, the Louisiana Supreme Court has original jurisdiction.[1]

FACTS
The proceeding originated with complaints against St. Romain by two of his former clients, Josephine Murphy and Cassandra Lynn Holliday. Both women were involved in automobile accidents on September *822 26, 1987. Although Holliday and Murphy complained of solicitation and failure of their lawyer to communicate with them, their real grievance was monetary. Both thought the sums they received from the settlement of their claims were inadequate.
Holliday's Chevrolet Camaro was hit at the intersection of North Claiborne Avenue and Basin Street, resulting in substantial property damage and some muscular strains. While riding in "Ed's Cab," Murphy was involved in an accident at the intersection of North Claiborne and Orleans Avenues. Like Holliday, Murphy sustained only muscular sprains. The accidents were on opposite sides of the Claiborne Avenue neutral ground; after Orleans Avenue crosses North Claiborne Avenue, it becomes Basin Street.
Lionel Nichols happened to witness both accidents. Nichols, a taxi driver, also owned some taxicabs and recognized the driver of Ed's Cab. Being at the scene, Nichols assisted Cassandra Holliday from her car. According to his testimony, Nichols engaged both Holliday and Murphy in conversation and understood from them that they would like to see an attorney. He recommended St. Romain, as he had done on other occasions. The two men are longtime personal friends.[2] Nichols is a client of St. Romain, and St. Romain sometimes does free legal work for Nichols.
After Holliday and Murphy signed contracts retaining St. Romain as their attorney, he arranged for each of them to see a doctor for examination and treatment. He obtained police reports, evaluated the brief medical reports, and began settlement negotiations with the companies that insured the drivers of the other cars. St. Romain did not keep his clients informed of his efforts on their behalf, but Holliday said his secretary kept her advised of his progress. St. Romain did not consult with his clients before the insurance companies issued settlement drafts.
Holliday's case was settled for $5,253.83. The legal fee was $1,751.28, medical was $240, the police report was $20 and vehicle rental was $213.64, leaving a balance of $3,028.91. Holliday's dissatisfaction with her recovery was compounded by the fact that it did not equal the property damage to her car. Subsequently, Holliday withdrew her complaint against St. Romain and he paid her the sum of $1,367.64. She testified that this amount plus her settlement check covered the final charge by the repair shop.
Murphy's claim was settled for the sum of $2,888. Deducted were a legal fee of $962.66, medical expenses of $620, X-ray costs of $268 and a police report charge of $20, leaving her a net recovery of $1,017.34. The medical expenses covered four office visits and fourteen sessions of therapy.
Marsha Ausstun, who is now a lawyer, was working as a law clerk in St. Romain's office at the time of the settlements. Ausstun attempted to explain Murphy's settlement offer to her. Although Murphy was advised that she could reject the offer, she signed to accept it. Ausstun also discussed Holliday's settlement offer with her. Ausstun asked Holliday if she wanted to speak to St. Romain, but she declined, signed the draft and left the office. After both women had endorsed the settlement drafts, they negotiated their settlement checks.
Josephine Murphy testified that St. Romain initially agreed to represent her for a 10% fee and that both he and Lionel Nichols had promised her a recovery of $8,000. Commissioner A. Remy Fransen, Jr. rejected this testimony, noting that Murphy had signed the retainer agreement calling for a one-third fee and had negotiated a settlement check for $1,017.34, which represented the balance due from the settlement after deduction of a one-third fee.
Holliday said she did not communicate with St. Romain or anyone representing him between the time of her complaint and the time she decided to withdraw it. In the interim, after consulting another attorney and reviewing a copy of her file, she decided that St. Romain had done substantial work on her behalf. She subsequently engaged *823 St. Romain to represent her in two other legal matters.
According to the commissioner's factual finding, there is no evidence that Nichols was paid anything to solicit the business of either Holliday or Murphy. The commissioner concluded that the charge of solicitation of the two clients by attorney St. Romain had not been proven.
St. Romain's contracts of retainer did not conform with Rule 1.5(c) of the Rules of Professional Conduct[3] in not specifying whether expenses were to be deducted before or after calculation of the contingency fee. In mitigation, attorney St. Romain has redrafted his retainer agreement to conform with the Rule.
The commissioner concluded that Holliday's settlement was inadequate since it did not equal her property damage but that adequate restitution had been made to her. The settlement on behalf of Murphy was found to be reasonable.
The commissioner decided that St. Romain had failed to comply with the requirements of Rule 1.4 of the Rules of Professional Responsibility by not properly communicating with these clients. St. Romain admitted he sometimes evaded his clients, but said it was because they generally wanted to borrow money. However, the commissioner concluded that neither client had suffered financial harm from St. Romain's failure to communicate.

LAW
The bar association has the burden of proving its allegations by clear and convincing evidence. Louisiana State Bar Ass'n v. Causey, 393 So.2d 88 (La. 1980); Louisiana State Bar Ass'n v. Alker, 530 So.2d 1138 (La. 1988). Clear and convincing evidence can be circumstantial. See In re Berlant, 458 Pa. 439, 328 A.2d 471, (1974), cert. denied, 421 U.S. 964, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975).

Solicitation
Rule 7.3(a) of the Rules of Professional Conduct of the Louisiana State Bar Association states:
(a) A lawyer shall not solicit professional employment, in person, by person to person verbal telephone contact, or through others acting at his request, from a prospective client with whom the lawyer has no family or prior professional relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain.
Rule 7.2(c) provides that: "A lawyer shall not give anything of value to a person for recommending the lawyer's services, ...."
A state may categorically ban inperson solicitation by lawyers for profit. Ohralik v. The Ohio State Bar Association, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). However, since the prohibition against direct solicitation for pecuniary gain infringes upon First Amendment rights, rules against solicitation must be narrowly drawn. In re Primus, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978).
A lawyer cannot ethically solicit clients through a non-lawyer who is rewarded for the solicitation. Louisiana State Bar Ass'n v. Beard, 374 So.2d 1179 (La.1979).
Rules against solicitation are prophylactic measures which are intended to prevent harm before it occurs. Ohralik. The fact that there has been no direct harm to a client does not excuse solicitation.
*824 However, harm to a client can be an aggravating factor. See Matter of Discipline of Perl, 407 N.W.2d 678 (Minn.1987).

Neglect and Failure to Communicate
Rule 1.4(a) of the Rules of Professional Conduct provides: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Rule 1.4(b) elaborates on the first provision: "The lawyer shall give the client sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so."
A lawyer cannot delegate the professional responsibility to advise clients to lay employees. Louisiana State Bar Association v. Edwins, 540 So.2d 294 (La. 1989). However, the minimum sanction of admonition is appropriate for cases in which a lawyer's negligence has caused little or no injury to his client. Louisiana State Bar Association v. Amberg, 553 So.2d 448 (La. 1989).

CONCLUSION
Solicitation is abhorrent to the legal profession and places lawyers in disrepute with the public. By coincidence, Nichols witnessed two accidents which occurred on opposite sides of the same intersection. There is an implication that St. Romain gave Nichols free legal work in exchange for Nichols' referral of cases to St. Romain. The line between solicitation and recommendation by a satisfied client is difficult to draw. The record supports the commissioner's conclusion that the charge of solicitation was not proven by clear and convincing evidence. An attorney's livelihood cannot be removed on the basis of suspicious circumstances. The bar association has not carried its burden of proof.
Since St. Romain has redrafted his retainer agreement to comply with the Rules of Professional Conduct, a private reprimand is an appropriate sanction for this breach.
Proper communication with clients is essential to maintain public confidence in the profession. St. Romain's failure to consult with these clients about the terms of their proposed settlements aggravated their dissatisfaction with the money they received. The result was an onerous disciplinary proceeding, which alone should caution St. Romain against repeating such conduct. However, after restitution was made to Holliday, the clients were not financially damaged. Under the circumstances, a public reprimand is an adequate sanction.

DECREE
PRIVATE REPRIMAND ORDERED FOR ATTORNEY ST. ROMAIN'S FAILURE TO CONFORM HIS RETAINER AGREEMENT TO THE RULES OF PROFESSIONAL CONDUCT.
PUBLIC REPRIMAND ORDERED FOR ATTORNEY ST. ROMAIN'S FAILURE TO PROPERLY COMMUNICATE WITH HIS CLIENTS.
COSTS ARE ASSESSED TO RESPONDENT.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
Nichols, who was unknown to the tort victims, approached them at the scene of the accidents, inquired whether they needed a lawyer, recommended that they hire respondent, and obtained their addresses. The same day respondent, accompanied by Nichols, went to the victims' homes and directly solicited their signatures on employment contracts. The prospective clients had no family or prior professional relationship with respondent and had never before heard of him.
This proof of respondent's conduct under these circumstances constitutes clear and convincing evidence of solicitation by respondent through another person. Respondent knew that the accident had just occurred and that Nichols had no prior relationship with the tort victims. Respondent could not have reasonably believed that the tort victims had asked a total stranger to *825 recommend a lawyer to represent them. Indeed, he had to know the solicitation came from Nichols. Respondent's conduct in going uninvited to the homes of the prospective clients he knew had been directly solicited by a paid or voluntary "runner" on his behalf and offering to represent them constituted direct solicitation by him.[1] The only way to prevent solicitation by lawyers is to recognize and punish such conduct.
NOTES
[*] Judge Melvin A. Shortess of the First Circuit Court of Appeal participated in this decision as Associate Justice Pro Tempore.
[1] LSA-Const. 1974, Art. 5, § 5(B).
[2] Although Nichols did not know St. Romain's home address, he said he knew how to get there.
[3] Rule 1.5(c) of the Rules of Professional Conduct states:

A fee may be contingent on the outcome of the matter for which the service is rendered except in a matter in which a contingent fee is prohibited by Paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
[1] The conduct in this case is vastly different from that of an attorney's accepting clients who consulted him upon the recommendation of a "happy client" who knew the prospective clients through prior family, neighborhood or work relationships.