577 So.2d 1125 (1991)
Richard E. CHAFFIN
v.
H. Matthew CHAMBERS.
No. CW 90 1137.
Court of Appeal of Louisiana, First Circuit.
March 28, 1991.
Rehearing Denied May 2, 1991.
*1126 Dennis R. Whalen, Baton Rouge, for plaintiff Richard E. Chaffin.
S. Alfred Adams, Baton Rouge, for defendant H. Matthew Chambers.
Before COVINGTON, C.J., and LANIER and GONZALES, JJ.
LANIER, Judge.
This action commenced as a suit for damages in tort alleging wrongful interference with a contract between an attorney and his client. The defendant filed a declinatory exception raising the objection of lack of subject matter jurisdiction and a peremptory exception raising the objection of no cause of action. The trial court overruled both exceptions. The defendant applied to this court for supervisory relief. We granted a writ of certiorari to review the ruling on the peremptory exception. Herlitz *1127 Construction Company, Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981).

FACTS
In Succession of Bertaut, 572 So.2d 142, 144 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1111 (La.1991), appears the following:
The peremptory exception raising the objection of no cause of action tests the legal sufficiency of the petition and is triable on the face of the pleadings. For the purpose of determining the validity of the exception, all well-pleaded allegations of fact are accepted as true, and if the allegations set forth a cause of action as to any part of the demand, the exception must be overruled.... Doubts are resolved in favor of the sufficiency of the petition. (Citations omitted).
The plaintiff asserts the following facts in his petition:
The petition of Richard E. Chaffin, a resident of lawful age of the Parish of East Baton Rouge, State of Louisiana and an attorney at law licensed to practice law in the State of Louisiana with respect shows that:
1.
On or about May 1, 1989, petitioner entered into a contract with Allen L. Miller, Jr., witnessed by the parents of Allen L. Miller, Jr., for the purpose of petitioner bringing an action, on behalf of Allen L. Miller, Jr. against parties responsible for damages to Allen L. Miller, Jr. suffered on or about April 29, 1989 at Rumors Lounge in Ascension Parish, Louisiana and further at the hands of a City Police officer from Port Vincent, Louisiana who is also a deputy sheriff of Livingston Parish.
2.
Petitioner recorded his contract of employment, and filed suit against the original tort feasors in this case, Terrell Scott, Tim Albritton, Barry Zito, and Scottsdale Insurance Company.
. . . . . .
4.
Subsequent to petitioner's being retained, recording his contract, and filing suit on behalf of Allen L. Miller, Jr., defendant H. Matthew Chambers, alleged to be an attorney at law practicing in the State of Louisiana, contacted Allen L. Miller, Jr. Chambers was made aware that Allen L. Miller, Jr. had retained petitioner but convinced him that he, H. Matthew Chambers, could better represent Allen L. Miller, Jr. than Richard E. Chaffin and the two attorneys who had been associated by petitioner.
5.
H. Matthew Chambers telephoned a partner of the law firm of Due, Smith, and Caballero, Rick Caballero, in Memphis, Tennessee, and offered to "peddle" the representation of Allen L. Miller, Jr., on information and belief for 50% of the attorney fee to be charged Allen L. Miller, Jr.
6.
Initially, Paul Due, senior partner of Due, Smith, and Caballero, and Rick Caballero, declined to interfere with the known contractual relationship existing between Allen L. Miller, Jr. and Richard E. Chaffin, and so advised Richard Chaffin and H. Matthew Chambers. The reasons stated were Due's unwillingness to sue Livingston Parish law enforcement officers,, [sic] and Due's knowledge of petitioner's contract of representation.
7.
At that point, H. Matthew Chambers attempted to peddle the representation of Allen L. Miller, Jr. back to Richard E. Chaffin for 25% of the attorney fee, which was refused by Chaffin. Chambers also attempted to enlist the aid of another lawyer to help peddle the representation of Allen L. Miller, Jr. back to Richard E. Chaffin; the other lawyer refused.

*1128 8.
Petitioner shows that subsequently after continued contacts by H. Matthew Chambers with Allen L. Miller, Jr., Paul Due and H. Matthew Chambers individually induced Allen L. Miller, Jr. to breach his contract with Richard E. Chaffin and retain Paul Due of the firm of Due, Smith, and Caballero, for an excessive attorney fee of as much as 50% of all sums recovered on behalf of Allen L. Miller, Jr.
9.
The actions of H. Matthew Chambers were in violation of the contractual rights existing between Richard E. Chaffin and Allen L. Miller, Jr., were conducted because of the greed of H. Matthew Chambers, in order that he could peddle the representation of Allen L. Miller, Jr. to Paul Due for, on information and belief, 50% of the attorney fee charged by Paul Due, and have caused Richard E. Chaffin the loss of the professional representation of Allen L. Miller, Jr., in which he could be reasonably expected to earn an attorney fee of one third of the sums recovered for Allen L. Miller, Jr., believed at this time to be a minimum of $3,300,000.00 in insurance coverages covering the tort feasors or responsible parties for the damages to Allen L. Miller, Jr., whose injuries include spinal cord injuries resulting in total paralysis below the waist and partial paralysis from the neck to the waist.
10.
Petitioner shows that the actions of H. Matthew Chambers were initiated out of greed, and for the purpose of depriving petitioner of his right to continue as the attorney of Allen L. Miller, Jr., and for H. Matthew Chambers to acquire, for the act of peddling the representation of Allen L. Miller, Jr., to Paul Due, 50% of the attorney fee charged by Paul Due.

CAUSE OF ACTION
The plaintiff asserts that a "petition which alleges the intentional inducement of a breach of contract by a person not a party to the contract, states a cause of action under Article 2315, Louisiana Civil Code", citing 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989). The defendant contends that the 9 to 5 decision cannot be applied to the facts of this case and "in light of our jurisprudence, codified law and common law authorities ..." the "petition fails to state a cause of action".
The contract between an attorney and his client may be one of mandate, or it may be one for the lease of the attorney's skill and labor, or it may be a combination of both. La.R.S. 37:212(A)(1, 2); La.C.C. art. 2985 et seq.; La.C.C. art. 2675 and 2745 et seq. In such a contract, the attorney agrees to perform a service for the client and the client agrees to compensate the attorney for the service. Board of Commissioners, Fifth Louisiana Levee District v. Commission on Ethics for Public Employees, 457 So.2d 802 (La.App. 1st Cir. 1984). La.R.S. 37:218, as amended by Acts 1989, No. 78, effective June 16, 1989, provides that an attorney-client contract may be for a "contingent fee" in which the attorney's fee is an interest in the subject matter of the suit and, thus, depends upon the success of the client's claim. Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979). However, even though a contract exists between an attorney and his client, the client has a right to discharge the attorney (and terminate the contract) at any time, with or without cause, subject to liability for payment for the attorney's services. Rule 1.16, Louisiana Rules of Professional Conduct (LRPC); Due v. Due, 342 So.2d 161 (La.1977); Fowler v. Jordan, 430 So.2d 711 (La.App. 2nd Cir.1983); Simon v. Metoyer, 383 So.2d 1321 (La.App. 3rd Cir.), writ denied, 389 So.2d 1338 (La.1980).
Prior to the 9 to 5 case, there was no cause of action in Louisiana for tortious interference with a contract. This rule was applied to deny recovery where the alleged tortious interference involved a contract between an attorney and his client. Lagarde v. Allstate Insurance Company, 515 So.2d 1147 (La.App. 5th Cir.1987), writ denied, 516 So.2d 368 (La.1988). In 9 to 5, the *1129 Louisiana Supreme Court was "called upon to decide whether an officer of a corporation owes any duty to a person having a contract with the corporation to refrain from unjustified, intentional interference with the contractual relationship." 9 to 5, 538 So.2d at 229. The court recognized a duty, but limited the duty as follows:
Accordingly, our courts' previous expressions barring absolutely any action based on a tortious interference with a contract are annulled insofar as they conflict with this opinion.... It is not our intention, however, to adopt whole and undigested the fully expanded common law doctrine of interference with contract, consisting of "a rather broad and undefined tort in which no specific conduct is proscribed and in which liability turns on the purpose for which the defendant acts, with the indistinct notion that the purposes must be considered improper in some undefined way." ... Some aspects of this tort have been subjected to serious criticisms, leaving open a good many questions about the basis of liability and defense, the types of contract or relationship to be protected, and the kinds of interference that will be actionable.... In the present case we recognize, as set forth particularly herein, only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person. (Citations omitted).
538 So.2d at 234.
The court then found that the evidence did not show that the duty had been breached and denied recovery. The Louisiana Supreme Court subsequently discussed 9 to 5 in Great Southwest Fire Insurance Company v. CNA Insurance Companies, 557 So.2d 966, 969 (La.1990) and observed that "This court recently recognized for the first time in some 87 years the possibility of a narrowly drawn action for intentional interference with contractual rights and indicated that it would proceed with caution in expanding that cause of action." On at least three occasions, the courts of appeal have declined to extend 9 to 5 beyond its original holding. Spencer-Wallington, Inc. v. Service Merchandise, Inc., 562 So.2d 1060 (La.App. 1st Cir.), writ denied, 567 So.2d 109 (La.1990); Tallo v. Stroh Brewery Company, 544 So.2d 452 (La.App. 4th Cir.), writ denied, 547 So.2d 355 (La. 1989); Farrell v. Boyer, 541 So.2d 398 (La. App. 4th Cir.1989).
The essence of the plaintiff attorney's cause of action is that the defendant attorney solicited the representation of the plaintiff attorney's client and intentionally interfered with the plaintiff attorney's employment contract with his client. Effective June 15, 1989,[1] LRPC Rule 7.3(a) and (b)(3) provide as follows:
Rule 7.3. Direct contact with prospective clients
(a) A lawyer shall not solicit professional employment, in person, by person to person verbal telephone contact, or through others acting at his request, from a prospective client with whom the lawyer has no family or prior professional relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain.
(b) A lawyer shall not solicit professional employment from a prospective client through any means, even when not otherwise prohibited by these rules, if:
. . . . .

*1130 (3) the prospective client is known to the lawyer to be represented by counsel, except where the client has initiated contact with the lawyer.
In Louisiana State Bar Association v. St. Romain, 560 So.2d 820, 823-824 (La.1990), the court discussed the solicitation of clients by attorneys as follows:
A state may categorically ban inperson solicitation by lawyers for profit.... However, since the prohibition against direct solicitation for pecuniary gain infringes upon First Amendment rights, rules against solicitation must be narrowly drawn....
. . . . .
Rules against solicitation are prophylactic measures which are intended to prevent harm before it occurs.... The fact that there has been no direct harm to a client does not excuse solicitation. However, harm to a client can be an aggravating factor....
Solicitation is abhorrent to the legal profession and places lawyers in disrepute with the public.
(Citations omitted).
At least one authority has suggested that violation of LRPC Rule 7.3 when considered in the context of the 9 to 5 decision "may result in both ethical complaints and civil suits against the offending attorney for tortious interference with the attorney/client contract." W. Mengis, Professional Responsibility, Developments in the Law 1988-1989, 50 La.L.Rev. 335-337 (1989). However, in Succession of Wallace, 574 So.2d 348, 350 (La.1991), appears the following:

This court has exclusive and plenary power to define and regulate all facets of the practice of law, including the admission of attorneys to the bar, the professional responsibility and conduct of lawyers, the discipline, suspension and disbarment of lawyers, and the client-attorney relationship.... The sources of this power are this court's inherent judicial power emanating from the constitutional separation of powers, ... the traditional inherent and essential function of attorneys as officers of the courts, ... and this court's exclusive original jurisdiction of attorney disciplinary proceedings.... The standards governing the conduct of attorneys by rules of this court unquestionably have the force and effect of substantive law....

Conversely, the legislature cannot enact laws defining or regulating the practice of law in any aspect without this court's approval or acquiescence because that power properly belongs to this court and is reserved for it by the constitutional separation of powers.... Accordingly, a legislative act purporting to regulate the practice of law has commendatory effect only until it is approved by this court as a provision in aid of its inherent judicial power. This court will ratify legislative acts that are useful or necessary to the exercise of its inherent judicial power, but it will strike down statutes which tend to impede or frustrate its authority.
(Emphasis added; citations omitted).
Accordingly, we question the authority of this court, or any court other than the Louisiana Supreme Court, to recognize a tort cause of action arising from the violation of the LRPC. A cause of action for intentional interference with contractual relations is based on La.C.C. art. 2315. La. C.C. art. 2315 is an act of the legislature, and, pursuant to the law as set forth in Succession of Wallace, the legislature cannot enact laws regulating the practice of law in any respect without the approval of the Louisiana Supreme Court. In this posture, the following observation by the Chief Judge of the Court of Appeal, Fourth Circuit in Tallo, 544 So.2d at 455 is pertinent:
While the present case does not involve the same situation as the one in 9 to 5, I am not convinced that the Supreme Court's recognition of a cause of action for tortious interference with contract is limited to the narrow situation presented in the case. However, if the cause of action is to be expanded I consider it to be the Supreme Court's function to do so and not ours as an intermediate appellate court.
*1131 Accordingly, we hold that the plaintiff attorney's petition fails to properly state a cause of action for intentional interference with contractual relations, and we sustain the defendant attorney's peremptory exception raising the objection of no cause of action.
Pursuant to La.C.C.P. art. 934, when the grounds of an objection raised in a peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order amendment within a delay fixed by the court. Tucker v. Kelly, 506 So.2d 730 (La.App. 1st Cir.1987). It is possible that Chaffin may have a cause of action against Chambers for a proportionate share of any fee owed by Miller for legal services rendered in connection with his tort case against the third persons. See, for example, Murray, Murray, Ellis, Braden & Landry v. Minge, 516 So.2d 213 (La.App. 4th Cir. 1987), writ denied, 516 So.2d 369 (La. 1988). We will remand to the trial court with instructions that an order issue permitting the plaintiff to amend his petition, if he can, to state a cause of action, within a delay deemed reasonable by the trial court.
This assignment of error has merit.

DECREE
For the foregoing reasons, the writ of certiorari issued herein is made peremptory; the trial court judgment overruling the peremptory exception is reversed and the peremptory exception raising the objection of no cause of action filed by the defendant is sustained; this action is remanded to the trial court with the instruction that an order be issued to the plaintiff to amend his petition to state a cause of action, if he can, within a delay fixed by the trial court. The cost of this writ shall be assessed in a final judgment on the merits of this action.
REVERSED, RENDERED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] Prior to June 15, 1989, LRPC Rule 7.3 provided as follows:

A lawyer may not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, in person or through others acting at his request, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain, or in any form of communication which violates Rule 7.1. Written communication not otherwise prohibited by these rules may be utilized provided:
(a) It is specifically identified as advertising material both on the communication itself and on any envelope in which it is transmitted, and
(b) The lawyer submits a copy of the written communication to the Association at its executive office prior to or at the time the material is first transmitted to any prospective client.