727 So.2d 564 (1998)
Wilson KREBS
v.
Thomas W. MULL, Lorraine Mull, and Mull & Mull.
No. 97 CA 2643.
Court of Appeal of Louisiana, First Circuit.
December 28, 1998.
*565 Garic K. Barranger, Covington, LA, Attorney for plaintiff/appellant Wilson Krebs.
Bruce S. Kingsdorf, New Orleans, LA, Frances M. Phares, Covington, LA, Attorney for defendants/appellees Thomas Mull, Lorraine Mull, and Mull & Mull.
Before SHORTESS, C.J., and CARTER and WHIPPLE, JJ.
WHIPPLE, J.
Plaintiff appeals from a judgment maintaining defendants' peremptory exception pleading the objection of no cause of action and dismissing his claim with prejudice. For the following reasons, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Wilson Krebs, an attorney licensed to practice law in Louisiana, filed suit against defendants, Thomas Mull and Lorraine Mull, also attorneys licensed to practice law in Louisiana, and Mull & Mull, their law firm, alleging "trade libel," tortious interference with contractual rights and "invasion of business interests." Defendants responded by filing an exception of no cause of action, averring that the petition merely set forth conclusory allegations of defamation and interference with contract and that no cause of action for "invasion of business interests" exists in Louisiana. Thereafter, plaintiff filed a supplemental and amended petition, setting forth more specific factual allegations. The original and amended petitions allege the following factual scenario.
In 1991, plaintiff was approached by two clients who were seeking redress as a result of having contracted Acquired Immune Deficiency Syndrome (AIDS) from infusions of a blood factoring compound used to treat hemophilia. Thereafter, plaintiff associated the law firm of Mull & Mull and defendants, Lorraine and Thomas Mull, to assist in the preparation for trial of these cases, as well as those cases which should subsequently come to plaintiff through his clients' association with other hemophiliacs.
Other similar cases did follow, and in most of the subsequent cases, attorney-client contracts were signed with both plaintiff and defendants. According to plaintiff, from the beginning of his association with defendants in these matters, there existed an understanding that all such cases would be handled jointly by plaintiff and defendants on a 50/50 fee and work basis, with plaintiff and defendants to share equally in any attorney's fees collected.
*566 The petitions further allege that both plaintiff and defendants prepared for and participated in the pilot case, which involved the death of Bradley Cross ("the Cross case"). However, in 1993, disagreements arose between plaintiff and defendants, largely due to defendants' unavailability after defendants established a law office in Hawaii.[1] Additionally, the petitions allege that prior to trial in the Cross case in 1993, without the knowledge or approval of plaintiff, defendant Thomas Mull engaged Charles Kozak, an attorney who is not a member of the Louisiana bar, to become an active participant as an attorney in the Cross trial. Thomas Mull and Kozak prepared for trial without plaintiffs knowledge or consent, thereby excluding plaintiff from active participation in the planning of the trial. On the second day of the Cross trial, Kozak was seated at counsel table without ever having been introduced to plaintiff.
According to the petitions, following the Cross trial, plaintiff continued to prepare the remaining cases with defendants' local representative. However, in late 1993 or early 1994, Thomas Mull set up and conducted a meeting in the office of Karl Duhon, an attorney in Lafayette, with many of plaintiff's and defendants' joint clients present at the meeting. At the meeting, Thomas Mull had discussions with these clients, without plaintiffs knowledge or consent, in which Mull disclosed that he anticipated the entry of other counsel to assist in conducting their cases.
Additionally, the petitions allege that in late 1993 or early 1994, Thomas Mull negotiated with Kozak and others to file a federal action in the Eastern District of Louisiana involving at least three clients who "emanated" from the original group which had been represented by plaintiff and defendants for several years, in addition to clients from other jurisdictions. Additionally, Thomas Mull refused to give plaintiff any information regarding the federal cases and had the cases sealed by order of court, thereby depriving plaintiff of any participation in the federal cases. The petitions further allege that these cases were subsequently consolidated with a federal class action in Illinois and that in preparation of these cases, Thomas Mull utilized the work product accumulated by plaintiff in concert with defendants, including discovery, pleadings and depositions paid for by plaintiff.
Finally, in October of 1995, plaintiff became aware that Thomas Mull was seeking to disassociate himself from plaintiff in the hemophilia-AIDS cases, through a letter Mull sent to plaintiff. Enclosed with the letter to plaintiff was a copy of a letter Mull had already sent to their joint clients, which, according to the allegations of the petitions, "invited" all of the joint clients to discharge plaintiff from representation. A copy of the letter Mull sent to the parties' joint clients was attached to the original petition. In the letter, Mull stated that his relationship with plaintiff had deteriorated to the point where he could no longer effectively work with plaintiff as co-counsel; that because of the complexity and expense of the cases, it may become necessary for Mull to associate other counsel; that he was precluded from associating other counsel as long as plaintiff remained co-counsel; and that he was, consequently, asking the joint clients to choose between representation by defendants or plaintiff. However, the letter Mull sent to the joint clients was dated eight days earlier than the letter Mull sent to plaintiff, enclosing a copy of the letter sent to the clients. After Mull sent this letter to the joint clients, ten of seventeen clients jointly represented by plaintiff and defendants discharged plaintiff.
Based on these factual allegations, plaintiff contended that he had set forth causes of action for "trade libel," tortious interference with contract, "invasion of business interest" and unjust enrichment.
In addition to these allegations, the petitions alleged that upon relocating to Hawaii, defendants enlisted new hemophilia-AIDS clients in Hawaii on their own behalf and to the exclusion of plaintiff. Plaintiff averred that he was entitled to a share of any fees acquired by defendants in their pursuit of "any and all" hemophilia-AIDS related cases.
*567 After plaintiff filed the supplemental and amended petition, defendants' exception of no cause of action was reset for hearing. Following the hearing, the trial court issued written reasons for judgment, concluding that although several claims were alleged, each of the claims related to tortious interference with contractual rights; the cause of action for interference with contractual rights was intended to be very narrow; and there was no clear precedent from the Louisiana Supreme Court recognizing this cause of action in the practice of law and attorney-client relationships. The trial court stated that without clear precedent from the Supreme Court, it was unwilling to find that this cause of action would exist under the factual situation presented. Thus, the trial court rendered judgment, maintaining the exception of no cause of action and dismissing plaintiffs suit with prejudice.
From this judgment, plaintiff appeals, averring that the trial court erred in maintaining the exception where the petition sets forth (1) a cause of action for tortious interference with contract under the doctrine of 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989), and (2) a cause of action for unjust enrichment.

DISCUSSION

Exception of No Cause of Action
The peremptory exception raising the objection of no cause of action is a procedural device to test the legal sufficiency of the petition and is triable on the face thereof. Matheny v. Greer, 95-1341, p. 3 (La.App. 1st Cir.2/23/96); 668 So.2d 1359, 1361, writ denied, 96-0737 (La.5/10/96); 672 So.2d 923. For the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition and any annexed documents must be accepted as true. Pleadings must be construed reasonably so as to afford litigants their day in court, to arrive at the truth and to do substantial justice. LSA-C.C.P. art. 865; Matheny, 95-1341 at p. 3; 668 So.2d at 1361.
When it can reasonably do so, the court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence. Kuebler v. Martin, 578 So.2d 113, 114 (La.1991). Any reasonable doubt concerning the sufficiency of the petition must be resolved in favor of finding a cause of action stated. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, 92-1545, p. 45 (La.App. 1st Cir.3/11/94); 634 So.2d 466, 493, writ denied, 94-0906 (La.6/17/94); 638 So.2d 1094.

Cause of Action for Tortious Interference with Contract
Historically, a cause of action for tortious interference with a contract was not available in Louisiana. See Kline v. Eubanks, 109 La. 241, 33 So. 211 (1902). However, in 9 to 5 Fashions, the Louisiana Supreme Court, relying on "the fundamental civil law principle that obliges a person to repair damage caused another by his fault" pursuant to LSA-C.C. art. 2315, recognized a narrowly defined cause of action for intentional interference with a contract. 9 to 5 Fashions, 538 So.2d at 234. The Court, thus, overruled jurisprudence which barred "absolutely any action based on a tortious interference with a contract" to the extent that the jurisprudence conflicted with the Court's holding in 9 to 5 Fashions. 9 to 5 Fashions, 538 So.2d at 234.
Although it recognized the availability of this cause of action in Louisiana, the Court specifically limited the scope of the cause of action. The Court noted that it did not intend to adopt "whole and undigested the fully expanded common law doctrine of interference with contract, consisting of `a rather broad and undefined tort in which no specific conduct is proscribed and in which liability turns on the purpose for which the defendant acts, with the indistinct notion that the purposes must be considered improper in some undefined way.'" 9 to 5 Fashions, 538 So.2d at 234 (quoting W. Prosser & P. Keeton, The Law of Torts Sec. 129 (5th ed.1984)). Instead, under the facts presented therein, the Court recognized "only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person." 9 to 5 Fashions, 538 So.2d at 234.
The Supreme Court has noted its intention to proceed with caution in expanding this *568 cause of action. See Great Southwest Fire Insurance Company v. CNA Insurance Companies, 557 So.2d 966, 969-970 (La. 1990). Furthermore, the courts of appeal have been reluctant to extend the cause of action to many factual scenarios outside of that presented in 9 to 5 Fashions. See, e.g., Guilbeaux v. Times of Acadiana, Inc., 96-360, pp. 5-6 (La.App. 3rd Cir.3/26/97); 693 So.2d 1183, 1186-1187, writ denied, 97-1840 (La.10/17/97); 701 So.2d 1327; Gulf South Business Systems and Consultants, Inc. v. State, Through Department of Environmental Quality, 625 So.2d 697, 701-702 (La.App. 1st Cir.1993); Tallo v. Stroh Brewery Company, 544 So.2d 452, 453-455 (La.App. 4th Cir.), writ denied, 547 So.2d 355 (La.1989). Inasmuch as this cause of action is based upon LSA-C.C. art. 2315, the courts have not recognized a cause of action for tortious interference with contracts unless a duty exists on the part of the defendant to refrain from interfering with the contract. See, e.g., Spencer-Wallington, Inc. v. Service Merchandise, Inc., 562 So.2d 1060, 1063-1064 (La.App. 1st Cir.), writ denied, 567 So.2d 109 (La.1990); Tallo, 544 So.2d at 453-455. The requisite duty in 9 to 5 Fashions arose out of a corporate officer's narrowly defined duty to refrain from intentional and unjustified interference with the contractual relation between his employer and those with whom his corporation contracts. 9 to 5 Fashions, 538 So.2d at 234.
In Chaffin v. Chambers, 577 So.2d 1125 (La.App. 1st Cir.), reversed, 584 So.2d 665 (La.1991), this court specifically addressed whether an attorney stated a cause of action against another attorney for tortious interference with a contract for representation between the plaintiff attorney and his client. In Chaffin, the plaintiff alleged that after he had been retained by the client, the defendant attorney convinced the client that he could better represent him, resulting in the client's breach of the contract with plaintiff. Chaffin, 577 So.2d at 1127-1128.
This court noted that the essence of the plaintiffs claim was that the defendant attorney had solicited representation of the plaintiffs client, a violation of the duty imposed upon attorneys pursuant to Louisiana Rules of Professional Conduct rule 7.3. Chaffin, 577 So.2d at 1129-1130. Nonetheless, the court noted that the Louisiana Supreme Court has exclusive jurisdiction over regulating the practice of law and that a legislative act purporting to do so required the Supreme Court's approval or acquiescence. The court further reasoned that, because an action for tortious interference with contract is based on LSA-C.C. art. 2315, an act of the legislature, it was for the Supreme Court, not the intermediate courts, to recognize this cause of action in relation to the practice of law. Chaffin, 577 So.2d at 1130. In maintaining defendants' exception of no cause of action in the instant case, the trial court specifically relied upon this court's opinion in Chaffin. However, on plaintiffs writ application, the Supreme Court reversed this court's opinion in Chaffin, stating as follows:
Granted. Judgment of the court of appeal is reversed. Judgment of the trial court overruling the exceptions is reinstated. Case remanded to the trial court for further proceedings.
Chaffin v. Chambers, 584 So.2d 665 (La. 1991).
The Supreme Court's reversal of this court's opinion in Chaffin clearly establishes that, in some circumstances, a tort action may lie for unwarranted interference by an attorney with the attorney-client contract of another attorney. Thus, the trial court herein committed legal error in maintaining the exception of no cause of action based upon this court's opinion in Chaffin.
In light of the Supreme Court's ruling in Chaffin, the issue is whether a duty existed on the part of defendants under the facts alleged herein which would support the existence of a cause of action for tortious interference with contract.

Application of Legal Precepts to the Factual Allegations Presented
Regarding the relationship between plaintiff and defendants, plaintiff has alleged that the parties agreed to handle the hemophilia-AIDS cases (1) on a 50-50 basis in which the two firms would share equally in the proceeds, (2) by exerting joint efforts in the preparation and trial of the cases, and (3) with both contributing, though not necessarily *569 equally, to the costs of the litigation. In considering the factual allegations of plaintiffs original and amended petitions, the essence of plaintiff's cause of action is that defendants acted in a manner to exclude plaintiff from participation in preparation of the cases for their jointly-represented clients, withheld information pertinent to the cases from him, and improperly encouraged the jointly-represented clients to discharge plaintiff, actions which he claims amount to intentional interference with plaintiffs employment contracts with his clients. The question we must answer is whether, under the facts alleged, defendants had a duty to refrain from the alleged acts of interference with plaintiffs attorney-client contracts. We find that such a duty exists.
As recognized by the Louisiana Supreme Court, an agreement by an attorney who has been retained to prosecute claims on a contingent fee to share the fee with another attorney who is employed to act as counsel in the litigation establishes between the attorneys the relationship of joint adventurers. McCann v. Todd, 203 La. 631, 639, 14 So.2d 469, 471 (1943). The joint undertaking of legal representation is deemed a "joint venture." DeFrancesch v. Hardin, 510 So.2d 42, 45 (La.App. 1st Cir.), writ denied, 513 So.2d 819 (La.1987).
The relationship of joint venture is fiduciary in character, and one adventurer cannot acquire and retain for himself any secret advantage in connection with the enterprise. Hayes v. Muller, 245 La. 356, 366, 158 So.2d 191, 194 (1963). Moreover, joint ventures are generally governed by the law of partnership. Peterson v. BE & K Incorporated of Alabama, 94-0005, p. 6 (La.App. 1st Cir.3/3/95); 652 So.2d 617, 623, writs denied, 95-0818, 95-0831 (La.5/12/95); 654 So.2d 350. Partners, and likewise joint adventurers, have a duty to deal fairly and honestly with each other. Each partner (or joint adventurer) must refrain from taking any advantage of other partners by the slightest misrepresentation or concealment of material facts. Full and complete disclosure of all important information is required despite the fact that the relations between the partners have become strained or in conflict. Thibaut v. Thibaut, 607 So.2d 587, 603 (La. App. 1st Cir.1992), writs denied, 612 So.2d 37, 38, 101 (La.1993).
Considering the foregoing, it is clear that defendants, by virtue of their agreement to act as co-counsel with plaintiff, owed a duty to plaintiff of full disclosure and fair and honest dealings.[2] This duty is certainly broad enough to encompass and prohibit the alleged conduct by defendants which interfered with plaintiffs ability to fulfill his duties under his attorney-client contracts.
Therefore, accepting as true all of the allegations of fact in the original and amended petitions, we find that plaintiff has stated a cause of action against defendants for intentional interference with contract, and the trial court erred in concluding otherwise.
Plaintiff further avers that the trial court erred in finding that he failed to state a cause of action for unjust enrichment, based upon defendants' appropriation of the fruits of the joint effort of plaintiff and defendants in the preparation of their joint cases and the subsequent use of this information by defendants for their personal gain. We pretermit this argument, noting the Supreme Court's directive that where there are two or more theories of recovery which arise out of the operative facts of a single transaction or occurrence, a partial judgment on an exception of no cause of action should not be rendered to dismiss one theory of recovery. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1239 (La.1993). Because the causes of action asserted by plaintiff in his petition all arise out of the operative facts of the same series of transactions or occurrences, the exception of no *570 cause of action was improperly maintained as to any individual theory of recovery. Thus, a review and discussion of whether or not a cause of action for unjust enrichment was stated is not required.

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court, maintaining defendants' exception of no cause of action and dismissing plaintiff's suit with prejudice, is reversed. This matter is remanded for further proceedings, including discovery, consistent with the views expressed herein. Costs of this appeal are assessed against defendants.
REVERSED AND REMANDED.
NOTES
[1] Defendants also continued to maintain a law office in St. Tammany Parish.
[2] We note that plaintiff is not attempting in the present action to collect any attorney's fees due to him pursuant to the alleged contracts of co-representation between himself and defendants and the individual attorney-client contracts. Apparently, plaintiff has intervened in the individual hemophilia-AIDS cases to recover his portion of the attorney's fees generated therein. Instead, the cause of action at issue herein is broader; it involves plaintiff's claim for general damages caused by defendants' interference with plaintiff's contracts with his pending and potential clients, not the fee-sharing restricted to the contract between plaintiff and defendants.