*1061 ATTORNEY DISCIPLINARY PROCEEDINGS
JjPER CURIAM.
This disciplinary matter arises from a petition for consent discipline filed by respondent, Lester J. Naquin, III,[1] following the institution of formal charges by the Office of Disciplinary Counsel (“ODC”). The ODC concurred in respondent’s petition, and the disciplinary board recommended the proposed consent discipline be accepted.
UNDERLYING FACTS
On April 12, 1999, Keith Segura was killed in an industrial boating accident in Terrebonne Parish. Mr. Segura was survived by his wife, Jayne, and the couple’s daughter, who was then two years old. Following her husband’s death, Mrs. Segu-ra contacted the family’s attorney, Warren Perrin of Lafayette, for advice. On April 21, 1999, Mrs. Segura formally retained Mr. Perrin to represent her in a wrongful death action.
On April 22, 1999, Mrs. Segura was contacted at her home by an unknown and unfamiliar man who identified himself as Samuel Small. Mr. Small represented himself to be an investigator working for respondent. According to Mr. Small, respondent had already conducted an extensive investigation into Mr. Segura’s death, li>had secured confidential photographs through a special contact with the Department of Wildlife & Fisheries, and had also secured a confidential videotape with statements from company employees allegedly responsible for Mr. Segura’s death.[2] To further entice Mrs. Segura, Mr. Small explained to her that one had to be “in the clique” to get anything accomplished in Terrebonne Parish. ' Mr. Small represented that he and respondent had those special types of relationships which could inure to Mrs. Segura’s benefit if she retained respondent. Mr. Small then asked Mrs. Segura if he could meet with her to discuss respondent’s undertaking her representation. When Mrs. Segura declined, explaining that she was already represented by counsel, Mr. Small informed Mrs. Segura that she should discharge her current attorney and retain respondent because he had already investigated the case and because he “knew all the judges.” Mr. Small further informed Mrs. Segura that she “needed an attorney from the area” where the accident occurred because “politics had a lot to do with it” and that giving special attention to judges often prompted them “to sometimes do favors for you.”
On April 30, 1999, Mr. Small again contacted Mrs. Segura. Notwithstanding that Mrs. Segura had already informed Mr. Small that she was represented by counsel, Mr. Small indicated that he had spoken with respondent and that respondent *1062 wanted to meet with Mrs. Segura the following day. On May 1, 1999, Mr. Small, his wife, and respondent appeared at Mrs. Segura’s home.[3] During the meeting, respondent overtly solicited Mrs. Segura’s wrongful death claim, which he contended would be | “& slam dunk.” He also indicated that he had a “girl in the Clerk’s Office” who would ensure that all the cases he designated would be specially assigned to “his judge.”[4] The “girl in the Clerk’s Office” was later identified as Jill Junot, a deputy clerk of court for the 32nd Judicial District Court for the Parish of Terre-bonne.[5] Respondent further asserted that “his judge” would award Mrs. Segura and her daughter a “wheelbarrow full of money” in the wrongful death action because the judge was “sympathetic to the small person and not in cahoots with insurance companies or oil companies.” Respondent showed Mrs. Segura a retainer agreement, which he asked her to review and execute, and showed her a blank check, which he offered to fill in and sign if she would agree to retain him.
On May 6, 1999, Mr. Small once again contacted Mrs. Segura. During the conversation, which Mrs. Segura tape recorded, Mr. Small indicated that contact had already been made with respondent’s “judge” and that “big bucks” were going to be paid to Mrs. Segura. Mr. Small also suggested that the judge had “talked to a federal judge that’s gonna impose a serious fine” on the defendants.
On May 7, 1999, during a telephone call between respondent and Mrs. Segura, respondent reiterated that he had somebody “in the Clerk’s Office” who would see to it that Mrs. Segura’s case would be allotted to the right judge.
| DISCIPLINARY PROCEEDINGS

Formal Charges

On August 11, 1999, the ODC filed one count of formal charges against respondent, alleging that his conduct violated Rules 4.2 (communicating with a person known to be represented by counsel), 5.3 (responsibilities regarding non-lawyer assistants), 7.2 (improper solicitation of prospective clients), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(e) (stating or implying an ability to improperly influence a judge, judicial officer, governmental agency, or official) of the Rules of Professional Conduct. On November 16, 1999, the ODC supplemented the formal charges to allege that respondent’s contact with Ms. Junot constituted the commission of a criminal act in violation of Rule 8.4(b) of the Rules of Professional Conduct. Respondent answered the formal charges, denying any misconduct.
Prior to a formal hearing in the matter, respondent filed a petition for consent discipline, seeking the imposition of disbarment. The ODC concurred in the petition.

Disciplinary Board Recommendation

The disciplinary board found that respondent breached duties owed to the legal *1063 system and the profession, and has engaged in knowing and intentional misconduct. The board further found that respondent’s actions caused actual injury to the legal system and the profession, given that his actions have eroded the trust and confidence which the public must have in the legal system for it to function properly. The board noted that there are no aggravating or mitigating factors set forth in the petition for consent discipline.
|BIn light of the facts and circumstances of the instant case, the board found the proposed sanction is appropriate:
Respondent violated his duty to the legal profession by knowingly and openly soliciting professional employment from Ms. Segura, both through a third party and in person. Respondent compounded this misconduct by doing so with the full knowledge that Ms. Segura was already represented by counsel. The injury resulting from such activities is well recognized by the court.[6]
By improperly communicating with Ms. Junot and disregarding a standing court rule dictating the method by which cases were assigned, the Respondent knowingly violated his duty to the legal system. While the degree [to which] Respondent’s conduct influenced or interfered with the legal proceedings involved may be difficult to' accurately ascertain, at the very least, there existed the potential for significant interference. Additionally, as noted by the ODC, Respondent’s actions have harmed “... the reputation of the state court judges of Terrebonne Parish, the reputation of the Clerk of Court’s Office in Terrebonne Parish, and has seriously tarnished the image of the legal profession and the public confidence in our judicial system.”
Accordingly, the board recommended the court accept the petition for consent discipline and disbar respondent from the practice of law. The board further recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
Neither respondent nor the ODC objected to the disciplinary board’s recommendation.
J^DISCUSSION
Because respondent has admitted the misconduct charged in the formal charges, the sole issue before us is the appropriate sanction for respondent’s misconduct. In making a determination of the appropriate sanction, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. Louisiana State Bar Ass’n v. Guidry, 571 So.2d 161 (La.1990).
Respondent’s numerous violations of the professional rules have caused actual harm to a particularly vulnerable victim. His actions strike directly at the public trust in the profession and overwhelmingly demonstrate that he lacks the fitness to practice law in this state. Therefore, based on our review of the record, we conclude disbarment is the appropriate sanction under the circumstances.
Accordingly, we will accept the petition for consent discipline and disbar respondent from the practice of law in Louisiana.
DECREE
Upon review of the findings and recommendation of the disciplinary board, and considering the record filed herein, it is *1064 ordered that the name of Lester J. Na-quin, III be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. On December 15, 1999, this court ordered that respondent be placed on interim suspension pursuant to a joint motion filed by respondent and the ODC. In re: Naquin, 99-3407 (La. 12/15/99), 761 So.2d 1269.

. Respondent later told Mrs. Segura that he had learned of her husband’s death through an article in the local newspaper.

. After receiving the first telephone call from Mr. Small, Mrs. Segura contacted her attorney, Mr. Perrin, who in turn contacted the QDC. Mrs. Segura agreed to permit an ODC investigator to attend the May 1 meeting (representing himself as Mrs. Segura's "cousin”) for the purpose of tape recording it.

. The judge to whom respondent referred was never suspected of any wrongdoing during the investigation involving respondent.

. Ms. Junot admitted that respondent paid her to personally handle the filing of various lawsuits in Terrebonne Parish, with the specific understanding that the cases were to be allotted to a certain judge, all in an effort to defeat Louisiana law requiring the random allotment of civil cases. A subsequent investigation by the Louisiana State Police uncovered at least 13 separate instances in which respondent gave Ms. Junot a check payable to cash in return for her assignment of predetermined cases to a particular judge. Respondent was later arrested and charged with 13 counts of corrupt influencing and 13 counts of public bribery, and those charges are still pending.

. Here the board inserted the following footnote:
See Louisiana State Bar Association v. St. Romain, 560 So.2d 820, wherein the Court noted, "Solicitation is abhorrent to the legal profession and places lawyers in disrepute with the public.” -