894 F.2d 181
 58 USLW 2496
 Alexander GRASSI, Sr., and Karen S. Grassi, individually and
as Next Friends of Alexander Grassi, Jr., Wendi Lu Grassi
and Kristen Suzanne Grassi, Minors; and I.R.I.
Internacional Limitada, Plaintiffs-Appellants,
v.
CIBA-GEIGY, LTD., Defendant-Appellee.
 No. 89-2284.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 16, 1990.
Rehearing and Rehearing En Banc Denied Feb. 16, 1990.
 
 Russell H. McMains, McMains & Constant, Corpus Christi, Tex. and Norton A. Colvin, Jr., Rodriguez, Colvin & Chaney, Brownsville, Tex., for plaintiff-appellant.
 Gordon Briscoe, Harlingen, Tex. and Neil E. Norquest, Ewers & Toothaker, McAllen, Tex., for Alexander Grassi, Jr., et al.
 Charles C. Murray, Atlas & Hall, McAllen, Tex. and Paul M. Dodyk, and Lisa L. Lang, Cravath, Swaine & Moore, New York City, for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before GEE, JONES and SMITH, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 Today's case presents the issue of whether a federal district court, in denying a plaintiff's motion to remand, may disregard a partial assignment made for the purpose of destroying diversity jurisdiction. Although this issue has been addressed by a number of district courts in this and other circuits, it is one of first impression in our court.
 
 I. FACTS
 
 2
 The Grassi family, appellants here, obtained a default judgment in Texas state court against Ciba-Geigy PLC ("PLC") for personal injuries which they sustained following the release of formaldehyde gas from urethane foam insulation, manufactured by PLC, which had been installed in their home. PLC is incorporated in the United Kingdom, which does not allow the enforcement of foreign default judgments against British corporations not maintaining an office in the foreign country. Unable to enforce its judgment against PLC, the Grassis instituted a collection suit against PLC's parent corporation, Ciba-Geigy, Ltd. ("Limited"), a Swiss Corporation, alleging that PLC was its "alter ego."
 
 
 3
 On the same day that they brought the collection action, the Grassis assigned a 2% interest in their claim to I.R.I. Internacional Limitada ("IRI"), a Costa Rican corporation with its principal place of business in San Jose, Costa Rica. IRI was incorporated approximately eighteen months after the Grassis obtained their default judgment against PLC and less than six months prior to the filing of the present collection action. The Grassis allege that the assignment was in consideration for investigative and collection work to be performed by IRI in relation to the judgment and award. Limited removed the action to Federal District Court, alleging diversity of citizenship between the Grassis and Limited. The Grassis then filed a motion to remand alleging that IRI's interest in the suit destroyed diversity jurisdiction between the Grassis and Limited, as there is no diversity where there are foreign parties on both sides. See Giannakos v. M/V Bravo Trader, 762 F.2d 1295, 1298 (5th Cir.1985) (per curiam).
 
 
 4
 The district court denied the motion to remand, finding that IRI had no legitimate and independent interest in the litigation, but was simply providing litigation support services on a contingent fee arrangement at the behest of the appellants' attorney (the Grassis' attorney was also the attorney for IRI). After filing a notice of substitution of attorney-in-charge for IRI, the Grassis filed a joint motion for reconsideration of the order denying their motion to remand. The district court denied this motion also.
 
 
 5
 Following the denial of their second motion to remand, the Grassis sought immediate appeal of the ruling. Acknowledging that the issue presented in this appeal is a close one involving a controlling question of law, the district court granted the Grassis leave to appeal pursuant to 28 U.S.C. Sec. 1292(b).
 
 II. DISCUSSION
 A. Provident & Company
 
 6
 The Grassis contend that standing Supreme Court precedent prohibits inquiry into the motives behind assignments which defeat diversity. In a line of cases, beginning with Provident Service Life Assurance Society v. Ford, 114 U.S. 635, 5 S.Ct. 1104, 29 L.Ed. 261 (1885), the Supreme Court held the colorable assignment of a complete cause of action to defeat removal effective to give the state court exclusive jurisdiction. Id. at 641, 5 S.Ct. at 1107; see also Oakley v. Goodnow, 118 U.S. 43, 6 S.Ct. 944, 30 L.Ed. 61 (1886); Leather Manufacturers' National Bank v. Cooper, 120 U.S. 778, 7 S.Ct. 777, 30 L.Ed. 816 (1887). In concluding that colorable assignments could not be scrutinized by federal courts, the Court looked to the 1875 Act of Congress,[1] which authorized federal courts to disregard colorable assignments creating diversity jurisdiction, but was silent as to such assignments which destroyed jurisdiction. See Oakley, 118 U.S. at 44, 6 S.Ct. at 944. The Court interpreted the statutory silence as indicating Congress's indifference to the collusive destruction of diversity jurisdiction, and concluded that as "no authority has as yet been given [federal courts] to take jurisdiction of a case by removal from state court when a colorable assignment has been made to prevent such a removal ... resort can only be had to the state courts for protection against the consequences of such an encroachment on the rights of a defendant."[2] Id.
 
 
 7
 Provident and its progeny thus stand, where assignments of a complete cause are concerned, for two propositions: First, that federal courts lack the power to look beyond the pleadings in determining the existence of diversity jurisdiction absent specific statutory authorization; and second, that state law and the state court systems will adequately defend a defendant's right to removal jurisdiction against devices designed to defeat it. These propositions have not fared well since 1887.
 
 
 8
 The first was largely abandoned in subsequent decisions of the Court, decisions which recognized that federal courts do possess some inherent authority to look beyond the pleadings in order to protect a litigant's right to diversity jurisdiction. In Wecker v. National Enamelling & Stamping Co., 204 U.S. 176, 27 S.Ct. 184, 51 L.Ed. 430 (1907), for example, the Court held that diversity jurisdiction was not defeated by joinder of a nondiverse defendant who could not conceivably be liable. The Court declared that
 
 
 9
 the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has the right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction.
 
 
 10
 Id. at 185-86, 27 S.Ct. at 188; see also Covington v. Indemnity Ins. Co., 251 F.2d 930 (5th Cir.), cert. denied, 357 U.S. 921, 78 S.Ct. 1362, 2 L.Ed.2d 1365 (1958).
 
 
 11
 Similarly, in In the Matter of the State of Nebraska, 209 U.S. 436, 28 S.Ct. 581, 52 L.Ed. 876 (1908), the Court upheld a circuit court's refusal to remand a case solely because the State of Nebraska was listed on the record as a plaintiff. The Court held that it was the duty of the federal court to determine whether the state of Nebraska was an actual party plaintiff, and to determine that question by consideration of the nature of the case presented by the whole record, and not simply by a reference to the nominal parties. Id. at 444-45, 28 S.Ct. at 584.
 
 
 12
 The second proposition for which Provident and its progeny stand--that state law and the state court systems will adequately defend diversity jurisdiction--has proved untrue in practice. For example, in Schepman v. Mutual Benefit Health & Acc. Ass'n., 231 Mo.App. 651, 104 S.W.2d 777 (1937), a personal injury defendant alleged that the assignment of a claim for collection purposes was a mere sham used to defeat diversity jurisdiction. Noting that the Missouri Supreme Court recognized a litigant's right to select a forum by indirect means, the court held that, even if a sham, the assignment would be respected so long as the defendant was fully protected from multiple liability.[3]
 
 
 13
 Reliance upon state law for the determination of federal court jurisdiction was ultimately rejected by the Supreme Court in the watershed case, Kramer v. Caribbean Mills, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1963). In Kramer, a creditor attempting to create diversity jurisdiction assigned its entire interest in a debt to an attorney, who in turn agreed to convey 95% of any net recovery back to the creditor. The assignee contended that, because the assignment was valid under state law, federal courts were bound to respect it. The Court rejected this argument, holding that "[t]he existence of federal jurisdiction is a matter of federal, not state law." Id. Finding the assignment collusive, the Court disregarded it for jurisdictional purposes.
 
 
 14
 Although the Court expressly declined to review its earlier holdings, Kramer's reliance on federal law has been seen as a significant departure from the Court's past decisions which held that the motives behind a complete assignment would not be scrutinized so long as it was valid under state law.[4] Courts in a number of circuits, including our own, have viewed Kramer as authorizing, for example, the scrutiny of administrator appointments, indubitably valid under state law, to determine the extent of their duties and the reasons for their appointments. See, e.g., Miller v. Perry, 456 F.2d 63 (4th Cir.1972); Bass v. Texas Power & Light Co., 432 F.2d 763 (5th Cir.1970), cert. denied, 401 U.S. 975, 91 S.Ct. 1194, 28 L.Ed.2d 324 (1971); O'Brien v. Avco Corp., 425 F.2d 1030 (2d Cir.1969). In Miller v. Perry, the Fourth Circuit read Kramer very broadly, viewing it as "injecting a new note of realism into the determination of diversity jurisdiction." Id. at 67. The court in Perry, which applied Kramer to disregard an administrator appointment which destroyed diversity, held that the difference between devices creating and devices destroying diversity was now immaterial. Id. at 66.[5]
 
 
 15
 Kramer has likewise been read by a number of district courts as signalling a departure from the Court's holding in Provident. Before Kramer, district courts almost uniformly refused to inquire into the motives behind assignments destroying diversity.[6] The opposite is true after Kramer.[7]
 
 
 16
 Although the basic propositions for which Provident and its progeny stand have been abandoned, the Supreme Court has not had formal occasion to reexamine that ruling since 1887. Because Provident remains as precedent, the precise issue before us is not so much whether the Supreme Court was incorrect in its decision in Provident --a matter of academic interest only--but whether we should extend Provident's holding to cases of partial, rather than complete, assignments.[8] We decline to do so.
 
 
 17
 The Supreme Court recognized the difference between partial and complete assignments in Kramer, when it stated that the partial assignment involved in that case provided "no occasion to reexamine the cases in which this Court has held that where the transfer of a claim is absolute, with the transferor retaining no interest in the subject matter, then the transfer is not 'improperly or collusively made,' regardless of the transferor's motive." Kramer, 394 U.S. at 828 n. 9, 89 S.Ct. at 1490 n. 9. Although some commentators have found the distinctions between partial and complete assignments unconvincing,[9] meaningful differences do exist.
 
 
 18
 As the Court noted in Provident, an out-of-state defendant has at least theoretical protection under state real party in interest laws if he is able prove that a claimant's complete assignment of interest is merely feigned. 114 U.S. at 640-41, 5 S.Ct. at 1106-07. With a partial assignment, however, an actual transfer of a fractional interest is made, making both the transferor and transferee real parties in interest. See, e.g., Heape v. Sullivan, 246 S.C. 218, 143 S.E.2d 366 (1965); Doremus v. Atlantic Coast Line R.R. Co., 242 S.C. 123, 130 S.E.2d 370 (1963).
 
 
 19
 More important, however, the assignor who makes a fractional assignment remains a party to the action, whose presence enables him to take better advantage of whatever local bias may exist. In instances where the percentage of the interest assigned is relatively small and the assignor retains control of the suit, the substance of the action remains an in-state plaintiff versus an out-of-state defendant.[10]
 
 
 20
 Congress has created diversity jurisdiction and the right of removal under 28 U.S.C. Sec. 1441 for the purpose of protecting non-resident litigants from local prejudice. Although there are many, including (or especially) members of the federal judiciary, who question the continuing need for its existence, removal based on diversity of citizenship is a right conferred by Congress, the need for which "may well be greatest when the plaintiff tries hardest to defeat it." American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, Official Draft, at 169 (1969). This right would be an illusory one indeed if a plaintiff could defeat it by the simple expedient of assigning a fractional interest in the outcome of the suit to an agent performing what is essentially litigation support on a contingent fee basis.
 
 
 21
 We have recognized the authority of federal courts to protect their own jurisdiction. In Panalpina Welttransport GMBH v. Geosource, Inc., 764 F.2d 352 (5th Cir.1985), we followed the Eleventh Circuit in holding that the alter ego doctrine may not be used to extend diversity jurisdiction, but added a caveat
 
 
 22
 that jurisdictional rules may not be used to perpetrate a fraud or ill-practice upon the court by either improperly creating or destroying diversity jurisdiction. Were that to occur, we would not elevate form over substance but would accomplish whatever piercing and adjustments considered necessary to protect the court's jurisdiction.
 
 
 23
 Id. at 355. We accordingly hold that federal district courts have both the authority and the responsibility, under 28 U.S.C. Secs. 1332 and 1441, to examine the motives underlying a partial assignment which destroys diversity and to disregard the assignment in determining jurisdiction if it be found to have been made principally to defeat removal.B. Legal Standard
 
 
 24
 The Grassis contend that if we hold that federal district courts do have the authority to inquire into the motives underlying partial assignments, the higher legal standards applied in fraudulent joinder cases should apply equally to collusive assignment cases. Specifically, the Grassis note that when a court considers whether the joinder of a defendant is effective all factual allegations are evaluated in the light most favorable to the plaintiff. See B., Inc. v. Miller Brewing Co., 663 F.2d 545 (5th Cir.1981). The Grassis likewise point out that claims of fraudulent joinder must be plead with particularity and proved by clear and convincing evidence. See Parks v. New York Times Company, 308 F.2d 474, 478 (5th Cir.1962), cert. denied, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964).
 
 
 25
 What the Grassis fail to recognize is that, despite having similar effects on jurisdiction, fraudulent joinder cases are fundamentally different from collusive assignment cases. The first issue involved in resolving an allegation of fraudulent joinder is whether the plaintiff has stated a claim against the nondiverse defendant. In doing so, all disputed issues of fact concerning that defendant's liability must be resolved in the light most favorable to the plaintiff. This is done to prevent the trial court from having to try the entire case in order to determine whether a claim has been stated against a particular defendant. Miller, 663 F.2d at 554. In this manner the district court avoids "trespass upon the judicial 'turf' of the state courts." Id. In the case of a partial assignment, however, a determination of the motive behind the assignment does not concern the merits of the case, so that no question arises of encroachment upon state court jurisdiction.
 
 
 26
 If, in a fraudulent joinder case, a claim is found to have been stated against a nondiverse defendant, the only way to attack the joinder is by proving fraud in the plaintiff's pleading of jurisdictional facts. Id. at 549. As with any allegation of fraud, it must be proved by clear and convincing evidence. In the present case, however, the appellees do not allege fraud in the pleadings.
 
 
 27
 Because of their similarity, assignments which destroy diversity and assignments which create diversity should be analyzed under the same standard; that is, the issue of whether the assignment was improperly or collusively made is to be resolved as a simple question of fact. See Bass v. Texas Power & Light Co., 432 F.2d 763, 766-67 (5th Cir.1970), cert. denied, 401 U.S. 975, 91 S.Ct. 1194, 28 L.Ed.2d 324 (1971).
 
 C. The Present Case
 
 28
 The Grassis contend that the district court erred in finding the assignment in the present case improper. As with any other finding of fact, the district court's determination will be reviewed under the "clearly erroneous" standard.
 
 
 29
 In making its determination, the court below was persuaded by several factors: the interest assigned to IRI was comparatively small; before the assignment, IRI had no interest in the litigation; both the Grassis and IRI were represented by the same attorney, with the Grassis controlling the litigation; the assignment occurred shortly before the suit was filed; the assignment to IRI represented what is essentially a contingent fee arrangement for collection work, which could have been effectuated without an assignment; and there was a strong likelihood of prejudice against the defendant.
 
 
 30
 The factors noted by the district court are supported by the record and are sufficient to support a finding that the overriding motive behind the present assignment was the desire of the Grassis to remain in state court. The order of the district court denying the Grassis motion to remand is therefore, AFFIRMED.
 
 
 
 [1]
 The 1875 Act is codified, as amended, at 28 U.S.C. Sec. 1359
 
 
 [2]
 The Court recognized that most states required an action to be brought in the name of the real party in interest
 
 
 [3]
 Likewise, in Hartford Acc. & Indemnity Co. v. Bernblum, 122 Conn. 583, 191 A. 542 (1937), the claimant assigned his interest to an attorney, with the proceeds to be held in trust for the claimant. Although it was conceded that the assignment was undertaken to defeat diversity jurisdiction, the court found no impropriety to have occurred. See also Hayday v. Hammermill Paper Co., 176 Minn. 315, 223 N.W. 614 (1929) ("That the transfer was without consideration and its purpose to maneuver defendant out of the right of removal is of no legal consequence.")
 
 
 [4]
 See, e.g., Cross v. Allen, 141 U.S. 528, 12 S.Ct. 67, 35 L.Ed. 843 (1891); South Dakota v. North Carolina, 192 U.S. 286, 24 S.Ct. 269, 48 L.Ed. 448 (1904); Black & White Taxicab Co. v. Brown & Yellow Taxicab Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681, 57 ALR 426 (1928); cf. Williamson v. Osenton, 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758 (1914)
 
 
 [5]
 It is upon Perry's broad reading of Kramer that the Court in Picquet v. Amoco Production Co. relied, when it determined that the motives underlying a partial assignment defeating diversity could be scrutinized. See 513 F.Supp. 938, 942-43 (M.D.La.1981). The district court below relied, in turn, on Picquet in denying the Grassis' motion to remand
 
 
 [6]
 See, e.g., Leshem v. Continental American Life Ins. Co., 219 F.Supp. 504 (S.D.N.Y.1963); Hair v. Savannah Steel Drum Corp., 161 F.Supp. 654 (D.S.C.1955); Ridgeland Box Mfg. Co. v. Sinclair Refining Co., 82 F.Supp. 274 (E.D.S.C.1949); Kerigan v. Massachusetts Bonding & Ins. Co., 74 F.Supp. 820 (W.D.Mo.1947); Harrison v. Hartford Fire Ins. Co., 55 F.Supp. 241 (W.D.Mo.1944). But see Lisenby v. Patz, 130 F.Supp. 670 (D.S.C.1955)
 
 
 [7]
 See, e.g., Picquet v. Amoco Production Co., 513 F.Supp. 938 (M.D.La.1981); McClanahan v. Snodgrass, 319 F.Supp. 913 (N.D.Miss.1970); Carter v. Seaboard Coast Line RR. Co., 318 F.Supp. 368 (D.S.C.1970); Gentle v. Lamb-Weston, Inc., 302 F.Supp. 161 (N.D.Me.1969). But see Arant v. Stover, 307 F.Supp. 144 (D.S.C.1969)
 
 
 [8]
 The Supreme Court has never spoken on the effectiveness of partial assignments which destroy diversity
 
 
 [9]
 See, e.g., Wright, Miller & Cooper, 14 Federal Practice and Procedure, Sec. 3641 at 135 (2d ed. 1985)
 
 
 [10]
 In addition, the assignor's presence in a partial assignment case makes the task of determining the assignor's motives less burdensome than it would be if a complete assignment were made. See Wright, Miller & Cooper, 14 Federal Practice and Procedure, Sec. 3641 at 135 (2d ed. 1985)