Richard J. DODSON, Plaintiff-Appellant,

v.

SPILIADA MARITIME CORP., et al., Defendants–Appellees.

No. 90–3579.

United States Court of Appeals,
Fifth Circuit.

Jan. 2, 1992.

James Anthony Babst, Peter B. Sloss, Chaffe, McCall, Phillips, Toler and Sarpy, New Orleans, La., for Spiliada Maritime, et al.

Monica T. Susprenant, Baldwin & Haspel, Metairie, La., for Chaffe, McCall.

Before POLITZ, JOHNSON, and GARWOOD, Circuit Judges.

POLITZ, Circuit Judge:

Richard J. Dodson, a lawyer, appeals the dismissal of his claims against a lawyer and a law firm. We find no basis for federal jurisdiction and, accordingly, vacate and remand with instructions.

### Background

The genesis of the present litigation is Dodson's attempted legal representation of five Filipino seamen. The seamen each hired Dodson in a wage dispute with their employer, Spiliada Maritime Corporation. Spiliada Maritime owned the M/V SPILIADA, a Liberian-registered vessel which called at the port of New Orleans in July 1989. While in New Orleans the five seamen and their union representative made a demand on the ship's master for wages, contending that Spiliada Maritime had altered their working contract after it had been agreed to. The master discharged the seamen and marked the dispute in their records. The seamen contacted Dodson and retained his legal services.[1]

Alfred B. Shapiro, Richard J. Dodson, Baton Rouge, La., for plaintiff-appellant.

1. Each of the seamen executed the following retainer agreement:

    ATTORNEY–CLIENT CONTRACT

    KNOW ALL MEN BY THESE PRESENTS that I, the undersigned, do hereby employ and retain RICHARD J. DODSON, Attorney at Law, to represent me, whether by suit, compromise or otherwise, in my claim against M/V Spiliada or by any other person liable in damages for injuries and any other claims sustained by myself.

    I do hereby agree to pay said attorney thirty-three and one-third (33-⅓%) percent of any settlement obtained in said case if same is settled at any time prior to instituting suit, forty (40%) percent of any settlement, verdict or recovery obtain [sic] in said action after instituting suit, and fifty (50%) percent of any settlement, verdict or recovery in said action if said suit is appealed to a higher court than the court of original jurisdiction. If recovery is made only in a workman compensation claim, I do hereby agree to pay said attorney the maximum statutory fee where prescribed. Said attorney, in addition thereto, is to receive reimbursement of all costs and disbursements advanced on behalf of the undersigned, together with interest thereon at the prevailing prime rate.

    Neither I nor RICHARD J. DODSON shall have the right without consent of the other, to settle, compromise, release, discontinue, or otherwise dispose of said suit or claim.

According to the allegations, when Spiliada Maritime learned that Dodson had been retained the five seamen were returned to the Philippines; they were not afforded an opportunity to consult further with Dodson. Nonetheless, Dodson began negotiations on their behalf with Robert Murphy of the New Orleans law firm of Chaffe, McCall, Phillips, Toler & Sarpy. Within a month, on August 3, 1989, Spiliada Maritime representatives settled the seamen's claims after direct contact with them in the Philippines. Dodson received no notice and did not consent to the settlements. Chaffe, McCall prepared the documents used by Spiliada Maritime in concluding the settlements.

Dodson first sent an associate to the Philippines to verify that the five seamen had settled their claims. He then filed suit in Louisiana state court against Spiliada Maritime, several of its agents and representatives, and Murphy and Chaffe, McCall.[2] Dodson alleged that Murphy and Chaffe, McCall had violated the Rules of Professional Conduct applicable to Louisiana lawyers and, in addition, had tortiously interfered with his attorney-client contracts. He sought compensatory damages for the time dedicated to the seamen's claims and the contingent fee to which he claimed entitlement, as well as punitive damages.

The case was removed to federal district court. The court based jurisdiction on a finding that Murphy and Chaffe, McCall, Louisiana citizens, had been fraudulently joined as parties. It then dismissed Dodson's suit against them for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). The district court certified its partial resolution of the case under Fed.R.Civ.P. 54(b) as a final judgment. Dodson timely appealed.

I do hereby bind my heirs, successors or legal representatives to terms and conditions set forth therein.

**2.** In addition the seamen, represented by other counsel, filed suit against Spiliada Maritime and the SPILIADA for back wages. *See Castillo v.*

*Analysis*

Dodson maintains on appeal that the removal was improper. The controlling statutory provision is 28 U.S.C. § 1441(a):

[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

The removing party must establish the existence of federal jurisdiction. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir. 1981). Where charges of fraudulent joinder are used to establish this jurisdiction, the removing party has the burden of proving the claimed fraud. *Id.; Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98 (5th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990).

Dodson, Murphy, and Chaffe, McCall are all Louisiana citizens. The defendants urge that Dodson named them as defendants solely to defeat federal diversity jurisdiction. To prove their allegation of fraudulent joinder they must demonstrate that there is no possibility that Dodson would be able to establish a cause of action against them in state court. *B., Inc.*, 663 F.2d at 549 (footnote and citations omitted).[3] In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned. *Carriere*, 893 F.2d at 100 (citing *B., Inc.*, 663 F.2d at 551); *Laughlin v. Prudential Insurance Co.*, 882 F.2d 187 (5th Cir.1989). We do not decide whether the plaintiff will actually or even probably prevail on the merits, but look only for a possibility that he may do so. *Green v.*

*Spiliada Maritime Corp.*, 937 F.2d 240 (5th Cir. 1991).

**3.** An additional ground for fraudulent joinder, that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts, is not at issue herein.

*Amerada Hess Corp.*, 707 F.2d 201 (5th Cir.1983), *cert. denied,* 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984). If that possibility exists, then " 'a good faith assertion of such an expectancy in a state court is not a sham ... and is not fraudulent in fact or in law.' " *B., Inc.,* 663 F.2d at 550 (quoting *Bobby Jones Garden Apartments v. Suleski,* 391 F.2d 172, 177 (5th Cir.1968) (footnote omitted)).

■ We conclude that Dodson has made the requisite assertion. Only the Louisiana Supreme Court may definitively decide the issues presented by Dodson's state-court petition. Dodson alleges a violation of Rule 4.2 of the Rules of Professional Conduct governing attorneys in Louisiana. That Rule, as adopted by the Louisiana Supreme Court, provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so. A lawyer shall not effect the prohibited communication through a third person, including the lawyer's client.

The Louisiana Constitution vests the Louisiana Supreme Court with exclusive original jurisdiction over disciplinary proceedings against a member of the Louisiana bar. La. Const.1974, Art. V § 5(B). The Louisiana Supreme Court has made manifestly clear that it "has exclusive and plenary power to define and regulate all facets of the practice of law, including the admission of attorneys to the bar, the professional responsibility and conduct of lawyers, the discipline, suspension and disbarment of lawyers, and the client-attorney relationship." *Succession of Wallace,* 574 So.2d 348, 350 (La.1991) (citations omitted). In this very recent case the Louisiana Supreme Court recognized not only its power

but its responsibility to regulate the practice of law in Louisiana. *Id.*

In exercise of its constitutional grant and its inherent judicial powers, the Louisiana Supreme Court has adopted, as a rule of court, the Rules of Professional Conduct. The *Wallace* court described the limits placed on the Louisiana legislature by virtue of the Supreme Court's power in this field.[4] The Louisiana First Circuit Court of Appeal has viewed *Wallace* as limiting the authority of even a Louisiana intermediate appellate court to recognize a cause of action arising from the Louisiana Rules of Professional Conduct. *Chaffin v. Chambers,* 577 So.2d 1125 (La.App.), *rev'd,* 584 So.2d 665 (La.1991) (*see* discussion *infra*); *see also* Scott T. Whittaker & Calvin P. Brasseaux, *Recent Developments: Corporate and Business Law,* 39 Louisiana B.J. 227 (Nov. 1991) (discussing Chaffin). It reasonably follows that Dodson properly filed suit in state court with the hope and expectation that the Louisiana Supreme Court ultimately would consider his claims, based on the professional rules of conduct, against the attorney-defendants.

Dodson also alleges that the defendants, in the course of representing their client, Spiliada Maritime, tortiously interfered with his contracts with the five seamen. We find in recent Louisiana jurisprudence support for this tenuous proposition, sufficient to withstand the fraudulent joinder challenge. The redoubt for that charge need have only a modicum of sturdiness for we look only for the possibility of recovery. *Green v. Amerada Hess Corp.* In the lead case of *9 to 5 Fashions, Inc. v. Spurney,* 538 So.2d 228 (La.1989), the Louisiana Supreme Court abrogated Louisiana's long-standing rule barring any action based on tortious interference with a contract. Louisiana's highest court held that a corporate officer has a general duty to refrain from the intentional interference with contractual relations between his corporation and

---

**4.** Wallace held that a statute limiting the power of an executor of a decedent's estate to discharge the attorney designated in the decedent's will was unconstitutional in light of Rules of Professional Conduct, Rule 1.16.

The legislature, in the exercise of its police power, has prescribed minimum standards for admission to the bar; these rules are tolerated as "complementary" actions. *See* Note Introducing Chapter 4, La.R.S. 37:211–219 (West 1988).

other persons. When the Louisiana Court of Appeal in *Chaffin* failed to recognize an action for tortious interference with a contract between an attorney and his client, the Louisiana Supreme Court reversed and reinstated an order of the trial court overruling the defendant's exception of no cause of action. *Chaffin v. Chambers,* 584 So.2d 665 (La.1991), *overruling,* 557 So.2d 1125 (La.App.1991). In addition, in *Penalber v. Blount,* 550 So.2d 577 (La.1989), the Louisiana Supreme Court held that a petition alleging intentional, calculated misconduct by an attorney stated a cause of action for damages resulting from wrongful seizure of goods even though the attorney ostensibly was acting on behalf of his client.

The Supreme Court's ruling in *Chaffin* and its decision in *Penalber* provide Dodson with a sufficient buckler and shield to withstand the fraudulent joinder challenge. In defeating such a charge, the plaintiff in *Amerada Hess* was not required to demonstrate that the Mississippi courts had ever recognized a purely verbal-abuse tort in circumstances analogous to those alleged in the plaintiff's complaint. It was sufficient that "in some circumstances," this tort theory had been allowed. 707 F.2d at 209.[5] *Chaffin* establishes that in some circumstances a tort action may lie for interference with an attorney-client contract. *Penalber* illustrates that even attorneys ostensibly acting on behalf of their clients may be liable under an intentional tort theory.

We express no opinion whether the defendants' conduct was either tortious or a violation of the Rules of Professional Conduct.[6] Because subject matter jurisdiction is lacking this court does not have the power to decide whether the plaintiff states a cause of action. *See Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Before this court is the narrow issue of whether Dodson perpetrated a "sham" by asking the Louisiana judiciary to judge the defendants' actions. We hold that he did not. We may hold no more at this juncture.

The Louisiana defendants were not fraudulently joined. The district court lacked jurisdiction to dismiss the action. Its judgment is VACATED and the matter is returned to the district court with instructions to REMAND it to the state court from whence it came.

---

**5.** Our decision in *Carriere v. Sears, Roebuck and Co.* is readily distinguishable. The *Carriere* plaintiffs were survivors of a Sears security guard who was killed while he was investigating suspicious activity on a Sears loading dock. One non-diverse defendant was a real estate management company that had a contractual relationship with a different store in the shopping mall. This store's property was not the site of the assault. The non-diverse defendant had no relation to Sears or to the guard. In support of their claim against this defendant, the plaintiffs relied upon a Louisiana case that permitted recovery against a store where the negligent acts of the store's security guard were a cause in fact of injuries sustained in an armed robbery. *See Harris v. Pizza Hut of Louisiana, Inc.,* 455 So.2d 1364 (La.1984). The *Carriere* court found *Harris v. Pizza Hut* to have "none of the features" of the facts alleged in the *Carriere* complaint. Therefore, the real estate company was fraudulently joined.

**6.** The defendants in this case prepared legal documents for their own client's use; they did not contact Dodson's putative clients or negotiate a settlement with them. *Contrast Chaffin,* 577 So.2d 1125.