Elton BRANSON, Plaintiff,

v.

NISSAN MOTOR ACCEPTANCE CORPO-
RATION, and American Lenders Service
Company of Jackson, Mississippi, Inc.,
Defendants.

Civil Action No. 3:96CV721(L)(N).

United States District Court,
S.D. Mississippi,
Jackson Division.

Dec. 19, 1996.

David C. Dunbar, Holcomb Dunbar, Jack-
son, MS, James L. Henley, Jr., Jackson, MS,
for Plaintiff.

Larry Spencer, King & Spencer, Jackson,
MS, Whitman B. Johnson, III, William W.
McKinley, Currie, Johnson, Griffin, Gaines &
Myers, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on the mo-
tion of plaintiff Elton Branson to remand the
cause to the Circuit Court for the First Judi-
cial District of Hinds County. Defendant
American Lenders Service Company of Jack-
son, Mississippi, Inc. (American Lenders) op-
poses the motion, and the court, having con-
sidered the memoranda and submissions of
the parties, now concludes that Branson's
motion to remand should be granted.[1]

1. The court, having found that it lacks subject matter jurisdiction in the instant case, necessarily considers moot defendant American Lenders' motion to dismiss or, alternatively, for summary judgment, as well as Nissan Motor Acceptance Corporation's (Nissan) motion for an order to allow the filing of their joinder in American Lenders' motion to dismiss and rebuttal of plaintiff's motion to remand. Plaintiff's motion to strike Nissan's rebuttal of plaintiff's motion to remand and joinder in American Lenders' motion to dismiss is, likewise, moot.

Branson originally filed this action in state court alleging among other things that Nissan Motor Acceptance Company (Nissan) and American Lenders wrongfully repossessed his car, in which Nissan had a security interest. Nissan, joined by American Lenders, removed to this court, asserting that jurisdiction was proper because Branson had fraudulently joined American Lenders for the purpose of defeating diversity jurisdiction. American Lenders then moved for dismissal or, in the alternative, for summary judgment and Branson moved to remand.

The facts central to the resolution of the motion to remand must be construed in favor of Branson, *see Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992) (stating that court "must initially resolve all factual disputes ... in favor of the non-removing party"), and are as follows. In May 1995, Branson, who is now 78 years old, purchased a used car from a Jackson, Mississippi auto dealership. Branson obtained a loan, which was subsequently assigned to Nissan, in order to purchase the car. The loan contract, among various other remedies, provided that in the event of default Nissan could repossess the car. Branson made the required loan payments in a timely manner until May 2, 1996 when he received a statement from Nissan informing him that his next payment was not due until July of 1996. On Nay 15, 1996, one of Branson's neighbors called Nissan, on behalf of Branson, to confirm the information contained in the statement. A Nissan employee, Glenda, verified that Branson's next payment was not due until July of 1996.

Branson, in reliance on the information provided by Glenda, did not send either his May or June loan payments and on June 15, he received a past-due notice from Nissan informing him that he now owed $ 335.51 on his account. On June 24, 1996, Branson received a demand letter from Nissan, advising him to cure his delinquency of $ 497.17 by submitting the money in the form of either a cashier's check, money order or wire transfer. The letter further requested that Branson, "[i]n order to avoid proceedings against [him] and further credit adversities," contact Nissan's collection representative.

On June 27, 1996, Branson contacted the credit representative who informed him that $321.32 would satisfy the alleged delinquency. Branson told the representative that he would remit the amount allegedly owing by money order on Monday, July 1, 1996. Branson mailed the money order on July 1, 1996 and called the collection representative with whom he had spoken on the 27th to make confirmation. Thereafter, at 2:00 a.m. on July 3, 1996, Branson "was awakened by sounds outside [his] house," and upon investigation, he saw that "two gentlemen, [who] were much younger and stronger than [he]" had jacked his car onto a truck. Branson told the men that he had a letter which said that his payments were current. American Lender employee Timothy Sullivan informed Branson that Branson would have to talk to Sullivan's supervisor, Ms. Freeman, about the matter.[2]

In her affidavit, Freeman states that on July 3, 1996, at approximately 2:00 a.m., she received a phone call from Sullivan concerning the repossession of Branson's car. Branson got on the line and informed Freeman that he had a letter from Nissan which indicated that his payments were current. Thereupon, Freeman told Branson "that his account had been assigned to American Lenders for repossession because the automobile payments were delinquent." Freeman claims, and Branson's affidavit does not dispute, that she asked "Branson if he had actually made the payments or if they had been misapplied to his account," to which Branson responded that Nissan "had told him that payments had been misapplied to his account, but 'all he needed to know' was that he had a letter stating that payments had been made." Freeman then informed Branson that if he had made all the pay-

---

**2.** Though *Dodson* does require that all disputed questions of fact be resolved in the non-moving party's favor, *see Dodson*, 951 F.2d at 42, in the instant case, Branson's affidavit, sworn after those given by Sullivan and Freeman, contains no mention of the phone call to Freeman. As the affidavits of the events occurring on July 3, 1996 are not directly contradictory and Branson has not disputed either that the phone call to Freeman occurred or the phone conversation, the court accepts Freeman's and Sullivan's affidavits as true for the purposes of this motion.

ments his car would be returned to him. According to Freeman's affidavit, she asked Branson to surrender his car keys to the American Lender employees on the scene. Branson states though that the American Lender employees told him that "he had no choice in the matter and informed [him that he] had better hand over the keys them." He maintains that he surrendered the keys because "[he] was afraid, based on their actions and the tone of their voices, that [he] would come to harm if [he] tried to prevent them from leaving without his car."

Branson maintains that his action against American Lenders was properly brought in state court and that the defendants improperly removed the cause to this court. Defendants may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction ... to the district court of the United States for the district and the division embracing the place where such action is pending." 28 U.S.C. § 1441(a). However, the defendants, as the removing parties, bear the burden of establishing the existence of federal jurisdiction. *Dodson*, 951 F.2d at 42. Additionally, "[w]here charges of fraudulent joinder are used to establish jurisdiction, the removing party has the burden of establishing the claimed fraud" by demonstrating that "there is no possibility that [the plaintiff] would be able to establish a cause of action against them in state court." *Id.*

Initially, in evaluating fraudulent joinder claims, the court must "resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party." *Id.* The court must then determine "whether that party has any possibility of recovering against the party whose joinder is questioned." *Id.* This inquiry does not require the court to decide whether the non-removing party "will actually or even probably prevail on the merits;" instead the court need only determine if there is a possibility that he may do so. *Id.* It follows that "[i]f that possibility exists, then 'a good faith expectancy in a state court is not a sham ... and is not fraudulent in fact or in law.' " *Id.*

(quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir.1981)).

Though plaintiff's complaint avers that American Lenders is liable to him for breach of contract, breach of fiduciary duty, negligence, breach of the duty of good faith and fair dealing and fraud, his brief in support of his motion to remand and in opposition to American Lenders' motion to dismiss or for summary judgment concentrates only on the potential tort claims that Branson may have against American Lenders. Namely, Branson contends that "[t]he facts as stated in his complaint and [Branson's] affidavit" set forth claims not only for a breach of the peace but also for conversion. Additionally, Branson asserts both that under *Hester v. Bandy*, 627 So.2d 833, 840–43 (Miss.1993), he "is entitled to sue both Nissan and American Lenders under facts that establish a claim for breach of the peace," and that "[u]nder Mississippi law generally, Branson is entitled to sue either Nissan, American Lenders, or both." American Lenders, on the other hand, objects to "plaintiff['s] creative[ ] attempt to amend [his] pleadings to include a claim of conversion," and also contends that based on the facts as set forth in the complaint, together with Branson's affidavit, there is no "possibility of recovery against" American Lenders. *See Dodson*, 951 F.2d at 42.

Initially, the court, having reviewed Branson's complaint, agrees with American Lenders' observations that the complaint contains no reference "to a cause of action based on the tort of conversion," and that "there is no possibility that Branson may recover for a claim [which] he has not pled." *See Addison v. Gulf Coast Contracting Serv., Inc.*, 744 F.2d 494, 499 (5th Cir.1984) (stating that to determine whether subject matter jurisdiction exists court must look to plaintiff's complaint "as it existed at the time petition for removal was filed"). However, given that "all disputed questions of fact and all ambiguities of state law" must be resolved in Branson's favor, the court finds that there is a possibility that Branson could recover from American Lenders in state court on his breach of the peace claim.

The Mississippi Supreme Court's most recent decision as to what constitutes a breach

of the peace came in *Hester v. Bandy,* 627 So.2d at 840, with the court holding that

> simply going upon the private driveway of the debtor and taking possession of secured collateral, without more, does not constitute a breach of the peace. The statute (M.C.A. § 75–9–503)[3] gives the secured party this right to same as if it were written into the contract. This, however, is the limit of the right to repossess without instituting legal action.

The *Hester* court further opined in dicta that § 75–9–503 merely codified "the former law regulating self-help through repossession under conditional sales contracts authorizing the vendor to repossess the collateral," and that by including the phrase "self-help" in the U.C.C., the draftsmen "intended to build upon the prior history of the self-help remedy." *Id.* at 841.

Prior to the *Hester* decision in 1993, the Mississippi Supreme Court in *Ivy v. General Motors Acceptance Corporation,* 612 So.2d 1108, 1112 (Miss.1992), affirmed a jury's determination that a breach of the peace occurred when, at 6:30 a.m., a debtor observed a tow-truck leaving his property with his van, decided to "chase after" the truck, and subsequently, caused an accident in an effort to stop the tow truck. In reaching its conclusion, the court lamented that the task of deciding whether a breach of the peace has occurred is not a simple one. The court stated:

> Since physical violence will ordinarily result in a breach of the peace, the secured party's right to repossession will end if repossession evokes physical violence, either on the part of the debtor or the secured party. At the other extreme from physical violence, a secured party may peaceably persuade the debtor to give up the collateral so that no breach of the peace occurs. Between these two extreme situations—one in which the violence occurs and the other in which the debtor peaceably gives up possession of the collateral—lies the line which divides those cases in which the debtor may exercise self-help repossession and those in which he must resort to the courts. As with most dividing lines, the line between those two extremes is sometimes hard to locate and, even if it is located, it sometimes moves.

*Id.* (quoting 9 W. Hawkland, Uniform Commercial Code Series, at § 9–503:03 (1991)).

In the case now before this court, it might appear that within the spectrum established by the Mississippi Supreme Court in *Ivy,* plaintiff's claim is closer to one "in which the debtor peaceably gives up possession;" however, the court cannot conclude that there is no possibility that Branson could recover from American Lenders in state court. *Dodson,* 951 F.2d at 41; *see also Commercial Credit Co. v. Cain,* 190 Miss. 866, 1 So.2d 776, 778 (1941), (finding that "[collateral] mortgagee has the right to take possession, in so far as concerns the manner thereof, over the objections of the mortgagor, so long as openly done at the proper place, and without force or violence or any threat thereof, and when the circumstances are such to create no apprehension of any violence on the part of the mortgagor, or other person from whom possession is being taken.").

■ Furthermore, the court agrees with plaintiff that regardless of whether Nissan will ultimately be vicariously liable for any negligence on American Lenders' part, plaintiff is entitled to seek recovery from both. *See Gulf Refining Co. v. Myrick,* 220 Miss. 429, 71 So.2d 217, 218 (1954) (stating that a plaintiff injured by negligent railroad conductor "could have instituted suit for the entire amount of the damage he suffered against either of the parties, or against both, as he chose to do"). Moreover, *Hester* in no way abrogates this principle. In *Hester,* the court found only that the trial court "erred in sustaining [the secured party's] defense that he was not liable because [the repossessor] was independent contractor," *see Hester,* 627 So.2d at 843, and did not address the plaintiff's choice of parties. Accordingly, as

---

**3.** The section provides, in pertinent part, that "[u]nless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action." M.C.A. § 75–9–503.

American Lenders has not demonstrated that there is no possibility that Branson may recover from it, the court concludes that it failed to sustained its "burden of proving the claimed fraud." *See Dodson,* 951 F.2d at 42. Consequently, the court finds that it lacks subject matter jurisdiction over the case and that, the case must be remanded.

For the foregoing reasons, it is ordered that Branson's motion to remand is granted.