Joe Richmond ALLISTON and Bennie Gayle Alliston, Plaintiffs,

v.

OMEGA INSURANCE COMPANY and David Jeffcoat, Defendants.

No. CIV.A.3:97CV357(L)(N).

United States District Court,
S.D. Mississippi,
Jackson Division.

July 11, 1997.

Brent E. Southern, Lingle & Griffis, PLLC, Jackson, MS, for Joe Richmond Alliston, Bennie Gayle Alliston.

Gregory L. Kennedy, Copeland, Cook, Taylor & Bush, Jackson, MS, for Omega Ins. Co., David Jeffcoat.

Kenneth G. Perry, Shell, Buford, Bufkin, Callicuttt & Perry, Jackson, MS, for David Jeffcoat.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on the motion of plaintiffs Joe Richmond Alliston and Bennie Gayle Alliston to remand the case to the Circuit Court of the First Judicial District of Hinds County, Mississippi, from which it was timely removed by defendants Omega Insurance Company (Omega), and David Jeffcoat, a Mississippi resident, on the ground that plaintiffs, Mississippi residents, have fraudulently joined Jeffcoat as a defendant in order to defeat diversity jurisdiction. Defendants have responded in opposition to plaintiffs' motion and the court, having considered the motion and submissions of the parties, concludes that the motion is not well taken and is due to be denied.

Plaintiffs filed suit in state court alleging that on March 21, 1996, in conjunction with the purchase of a mobile home, they contacted Jeffcoat to obtain insurance coverage for the mobile home. Jeffcoat placed the insurance with Omega which issued a policy to plaintiffs effective March 22, 1996. On April 24, 1996, the mobile home was burglarized, and according to the complaint, numerous items were stolen and the mobile home was damaged. Shortly thereafter, plaintiffs via Jeffcoat, notified Omega of the loss and were informed by Omega the claim submitted was not covered under the policy, despite Jeffcoat's representation to the contrary. Following the denial of coverage, plaintiffs assert that they attempted to explain that the basis upon which Omega denied coverage was erroneous and in response Omega issued a notice of cancellation of the policy. The Allistons aver further, that though Omega did finally acknowledge coverage under the policy in October of 1996, it refused to properly compensate them for their losses.

Omega and Jeffcoat timely removed the case to this court alleging that jurisdiction is proper pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000, exclusive of costs and interest, and the citizenship of the plaintiffs is diverse from Omega, the only properly joined and served defendant. In support of their motion to remand, the Allistons assert two arguments: First, they contend that because there yet remains a possibility that they might be able to state a cause of action in state court against Jeffcoat, his joinder is not fraudulent. Secondly, they assert that the amount in controversy in this case does not meet the jurisdictional limit. The court will address each argument in turn.

It is well settled that the defendants may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction ... to the district court of the United States for the district and the division embracing the place where such action is pending." 28 U.S.C. § 1441(a). However, the defendants, as the removing parties, bear the burden of establishing the existence of federal jurisdiction. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992). Additionally, "[w]here charges of fraudulent joinder are used to establish jurisdiction, the removing party has the burden of establishing the claimed fraud" by demonstrating that "there is no possibility that [the plaintiffs] would be able to establish a cause of action against them in state court." *Id.*

Initially, in evaluating fraudulent joinder claims, the court must "resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party." *Id.* The court must then determine "whether that party has any possibility of recovering against the party whose joinder is questioned." *Id.* In *Grassi v. Ciba–Geigy, Ltd.*, 894 F.2d 181 (5th Cir. 1990), the Fifth Circuit set forth the appropriate analysis:

> The first issue involved in resolving an allegation of fraudulent joinder is whether the plaintiff has stated a claim against the nondiverse defendant. In doing so, all disputed issues of fact concerning the defendant's liability must be resolved in the light most favorable to the plaintiff. This is done to prevent the trial court from having to try the entire case in order to determine whether a claim has been stated against a particular defendant.... In this manner the district court avoids "trespass upon the judicial 'turf' of the state courts."

This inquiry does not require the court to decide whether the non-removing party "will

actually or even probably prevail on the merits;" instead the court need only determine if there is a possibility that he may do so. *Id.* It follows that "[i]f that possibility exists, then 'a good faith expectancy in a state court is not a sham … and is not fraudulent in fact or in law.' " *Id.* (quoting *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 550 (5th Cir.1981)).

 At the outset, the court recognizes that under Mississippi law, insurance agents and adjusters, while not liable for ordinary negligence in performing their duties on behalf of the insurers, can "incur independent liability when [their] conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured." *Bass v. California Life Ins. Co.,* 581 So.2d 1087, 1090 (Miss.1991) (quoting *Dunn v. State Farm Fire & Casualty Co.,* 711 F.Supp. 1359 (N.D.Miss.1987)). With regard to any tortious conduct on Jeffcoat's part, the complaint alleges that "Plaintiffs were informed that the claim submitted was not covered under the policy, despite representations made by Mr. Jeffcoat, to the contrary." Plaintiffs seem to assert they have stated a claim for fraudulent misrepresentation against Jeffcoat because, contrary to his representation that they would have coverage under the policy that he had procured for them, "[a]fter loss occurred and [a] claim was submitted … it was represented to the Plaintiffs that language contained in the policy prohibited this claim from being honored." Plaintiffs' argument simply ignores the fact that inasmuch as Omega has admitted that there was coverage available, Jeffcoat's representation of coverage was not false. *See Great Southern Nat'l Bank v. McCullough Envtl. Serv., Inc.,* 595 So.2d 1282, 1288 (Miss. 1992) (stating that a cause of action for fraud or misrepresentation requires that a party prove, *inter alia,* a false representation). Consequently, plaintiffs have no possible basis for recovery on this claim.

 The complaint further avers that

[d]efendants had a duty to honor the properly filed claim; to timely and thoroughly investigate the claims; to provide coverage purchased under the subject insurance policy; to act toward its insured in good faith in processing and investigating the loss, to refrain from trying to avoid its duties and responsibilities to its insured by improperly terminating coverage under the policy subsequent to the loss.

Apparently referencing the above allegations from the complaint, plaintiffs contend that they "have asserted that the claim itself has been improperly handled, possibly in part due to Defendant Jeffcoat's action or inaction." However, defendants point out that as a soliciting agent for Omega, "Jeffcoat did not have any of the duties and responsibilities contained in [the foregoing paragraph]," and observe that "[p]laintiffs have failed to show how Jeffcoat was tasked with these responsibilities or failed to carry out the same." The court agrees. Moreover, plaintiffs' conclusory allegation that Jeffcoat *possibly* had a role in the alleged mishandling of their claim, even if true, cannot be said to amount to "gross negligence, malice, or reckless disregard of the rights of the insured." *See Bass,* 581 So.2d at 1090. Based on the foregoing, the court concludes that defendants have established that Jeffcoat was fraudulently joined in order to defeat this court's subject matter jurisdiction.[1]

 Turning now to the issue of the amount in controversy, though the complaint does not request a specific amount for damages, it does pray for damages to compensate the Allistons for replacement of the stolen items, repair of the mobile home, loss of use, and mental and emotional pain and anguish, and for "additional elements of damage to be developed in discovery." Significantly, the complaint also states that the Allistons are entitled to extra-contractual and punitive

---

1. In their rebuttal brief, plaintiffs take the position that because Omega acknowledged coverage during settlement negotiations between Omega and plaintiffs' attorney prior to the filing of the lawsuit, the fact that Omega acknowledged coverage prior to the filing of the lawsuit should (or rather under the rules of procedure cannot) be dispositive "of the issue as to whether or not a potential cause of action exists as against Defendant Jeffcoat." As the court sees this argument, plaintiffs' position ignores not only the fact that Omega specifically admitted in its answer that coverage existed, but also plaintiffs' own averment that "in October of 1996, Omega finally acknowledged that the loss was covered under the subject policy."

damages. In addition to the complaint, defendants direct the court's attention to two letters wherein plaintiffs, prior to the initiation of litigation, valued their claim, exclusive of extra-contractual and punitive damages, at $30,000.[2] This, taken together with the fact that plaintiffs are seeking recovery on a bad faith claim against an insurance company, leads the court to conclude that the actual amount in controversy likely exceeds the $75,000 jurisdictional threshold. Accordingly, unless plaintiffs can show "to a legal certainty that the claim is really for less than the jurisdictional amount," jurisdiction is proper. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir.1995) (*De Aguilar II*); *see also Asociacion Nacional de Pescadores v. Dow Quimica*, 988 F.2d 559, 565 (5th Cir. 1993) (concluding that post-removal affidavits which clarified "a petition that previously left the jurisdictional question ambiguous" were allowable because "under the circumstances, the court is still examining the jurisdictional facts *as of the time* the case is removed"). Though they have not done so, the court will allow them until July 18, 1997 to establish, via affidavit or certification to the court, that they do not and will not seek damages in excess of $75,000. In the event that this is provided, the court will remand.

Based on the foregoing, it is ordered that plaintiffs' motion to remand is denied and that the claims against defendant Jeffcoat be dismissed.

---

**2.** In the first letter, dated December 19, 1996, sent prior to beginning of litigation on April 27, 1997, plaintiffs' attorney takes issue with Omega's estimation of the claim, contending that its estimation is off the mark for three reasons. First, Omega incorrectly depreciated certain items on the list submitted by the Allistons, secondly, according to the letter, Omega failed to take into account repair and cleaning costs incurred as a result of the alleged burglary, and finally, Omega failed to include in its valuation three household items—a refrigerator, washing machine and dryer. At the conclusion of the letter, the attorney states "[i]n an effort to resolve this matter, my clients are prepared to accept a lump sum payment of $30,000 in full and final settlement of the matter." The letter neither indicates nor suggests that the proposed settlement of $30,000 includes compensation for any intangible damages.

The court's conclusion is further supported by a second letter, dated March 27, 1997, which states:

Please recall from some of my earlier correspondence that my clients were thinking of settlement in the area of $30,000. The figure that has been tendered is simply consideration for items lost in the theft. The fact that the Allistons have been suffering with this situation for over a year now must have some value to you and your company. I suggest that the delay that has been experienced is reason enough for additional monies to be considered.

Once again this letter fails to indicate that the $30,000 valuation includes exemplary or extra-contractual damages: